INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v. ZACK R. HALL.

No. 1395.

**1.  Railway—Killing Stock—Negligence.**

See opinion for evidence held not to justify submitting to the jury the question of negligence of engineer in running over stock at night.

**2.  Court and Jury—When not to Submit Issue.**

A scintilla of evidence or mere surmise of negligence does not justify a judge in leaving the case to the jury.

**3.  Same.**

By COLLARD, J.—If the judge is of the opinion that a new trial should and

would be granted because of the insufficiency or inherent weakness of the testimony to support a finding by the jury he should not submit the issue to them. It was error demanding reversal to submit as a ground for recovery a theory supported only by insufficient evidence, though upon other independent grounds the verdict was supported by sufficient evidence. (FISHER, C. J. concurring.) If there was no error in so doing then the verdict should be sustained if supported by the evidence on either ground.

4. Same.

By KEY, J.—If a different rule as to the province of judge and jury is to be adopted, a case involving more than one theory ought to be submitted on special issues; and it would be error to do otherwise if the evidence on one issue is insufficient to support a verdict.

5. Damages—Killing Stock—Market Value.

It was not reversible error to instruct the jury to find for the plaintiff "in any amount you in your judgment think was the cash market value of the jack in the neighborhood . . . at the time he was killed."

6. Railway—Killing Stock—Sufficient Fence.

An instruction that it was defendant's duty to use ordinary care to keep its fence in such repair as to prevent plaintiff's jack from passing through it was not erroneous as making defendant an insurer of the sufficiency of the fence.

7. Same—Contributory Negligence.

An instruction that it was the duty of plaintiff to repair the fence and prevent the escape of his stock onto the track, if he could do so at reasonable expense, was properly refused.

8. Damages.

See evidence held to support verdict for $800 for value of jack killed by train.

APPEAL from Hays. Tried below before HON. ED. R. KONE.

Suit by plaintiff, Zack R. Hall, to recover damages for the killing of his jack through the alleged negligence and carelessness of the defendant, its agents and servants, in running upon and against the same with an engine and train. The charge was that the jack was in a pasture or field adjacent to defendant's right of way, which defendant had fenced, but that the fence was out of order and that the jack, through the breaks in the fence, strayed upon the right of way; also that the servants of the defendant, in charge of the engine and train which collided with the jack, could have seen, and in fact did see it in time, by the exercise of ordinary care, to have avoided the collision.

There was evidence tending to show that the fence and gate leading from the field onto the right of way were out of repair prior to the night upon which the jack was killed; there was also evidence tending to show that the fence and gate, the afternoon preceding the killing, had been repaired by the servants of the defendant.

The court gave in charge to the jury the following special instruction:

"You are instructed that it was the duty of defendant to use ordinary care to keep its fence inclosing its right of way in such repair as to prevent plaintiff's jack from passing through it—that is they were compelled to keep a lawful fence, and if you believe from the evidence that defendant had failed to use ordinary care and diligence to repair and maintain its said fence, and if you further believe that said failure on the part of defendant was the proximate cause of the killing of said jack, you will find for the plaintiff."

The plaintiff offered testimony to the effect that he had paid for the jack $600. There was also evidence to the effect that a jack of the size and description of plaintiff's jack in the neighborhood of Kyle was worth in the market $600 or more—how much more was not disclosed except by the witness W. W. Lock, who sold the jack to plaintiff, and who testified that its market value in Kyle in December, 1893, was from $700 to $900. The witness Desha Bunton testified that he had sold a smaller jack than plaintiff's jack, in 1893, in the neighborhood of Kyle for $500. He further testified that $600 would not be a high market price for the jack killed; that he would bring $500 or $600 on the market, but that the value of the jack would depend upon his foal-getting qualifications. There was testimony of Van Harber, Fielder and A. H. Lock as to the ability of the jack to get colts.

The court charged the jury, among other things, as follows: "If you believe, from the evidence before you, that the defendant did, as alleged in plaintiff's petition, on the sixteenth day of December, 1893, by its servants and employes, negligently and carelessly run on to, upon and over said jack, thereby killing him, you will find for the plaintiff Hall in any amount that you, in your judgment, may find was the cash market value of the jack in the neighborhood of Kyle at the time he was killed by the defendant, if he was so killed, together with 6 per cent interest upon the amount that you may find for plaintiff, from the sixteenth day of December, 1893, to date.

There was evidence tending to show that the plaintiff, prior to the killing of his jack, knew that the fence near the place where the jack was killed was down and out of repair on the west side of the track, and that he sometimes let the jack run in the field on that side. The defendant requested the court to charge the jury as follows:

"The jury are instructed that it was the duty of plaintiff to repair the fence to the field in which the jack was confined and prevent the escape of the jack if he could do so at a reasonable expense and was able to do so."

There was no evidence that the plaintiff, with knowledge of the condition of the fence, made any effort to repair same or that he called it to the attention of defendant, its agents or servants.

The case of Fitzgerald v. Hart, 17 S. W. Rep., referred to in the following opinion, was a suit on a promissory note to which defendant plead failure of consideration and notice thereof to plaintiff before his purchase. The trial court instructed a verdict for plaintiff. On appeal a majority of the Commissioners of Appeals held that: "The defendant was entitled to have the issues presented by his answer passed upon by the jury under appropriate instructions from the court, and that the instruction of the court to the jury to return a verdict in favor of plaintiff was, under the circumstances, an abuse of its discretion." Fisher, J., expressed the opinion that the evidence established that defendant was an innocent purchaser, and that the trial court, since he should have granted a new trial if the jury had come to a contrary conclusion,

was justified in directing a verdict. The Supreme Court reversed and remanded the case as per the opinion of a majority of the Commissioners, October 30, 1891. See also Fitzgerald v. Hart, 23 S. W. Rep., 933, another but similar case in Court of Civil Appeals, Fourth District.

*Fisher & Townes*, for appellant.—1. The court erred in its charge in authorizing the jury to find for the plaintiff "in any amount you, in your judgment, think was the cash market value of the jack in the neighborhood of Kyle at the time he was killed," etc., because the jury were thereby not restricted, in ascertaining the cash market value, to the evidence before them; and further, because they were not thereby restricted in the amount of their verdict to the amount claimed by the plaintiff in his petition. Railway v. Muldrow, 54 Texas, 233; Railway v. Tankersley, 63 Texas, 57, 61; Railway v. Levi, 59 Texas, 679.

2. "The court erred in its charge in submitting the issue as to whether the jack was struck through the negligence of those in charge of the train, because there was no evidence tending to sustain such issue."

3. "The court erred in giving in charge to the jury the plaintiff's second special instruction because it made the defendant liable for a failure to keep and maintain such a fence as would absolutely prevent the jack from passing through it, and further because said charge made the defendant liable if its fence was down and out of repair when the jack was killed, even if the condition of the fence was due to the jack's breaking through it."

4. "The court erred in refusing to give defendant's first special instruction, because same was the law applicable to the case and the phase of the law therein given was not covered by any charge given to the jury."

5. There was no evidence justifying the verdict of the jury that the market value of the jack at the time and place he was killed was $800.

*Hutchison & Franklin* and *Yale Hicks*, for appellee.—1. The measure of damages was such a sum as the evidence showed to be the cash market value of the jack in the neighborhood of Kyle at the time he was killed. Such in effect was the measure laid down by the charge of the court. Thompson on Trials, vol. 2, sec. 2318; Mathews v. Hamilton, 23 Ill., 470; Railway v. Ingraham, 77 Ill., 309.

2. The court did not submit specially the issue as to whether the jack was killed through the negligence of those in charge of the train, and the charge is not subject to the objection of submitting an issue to support which there is no evidence. However, there was sufficient evidence to have warranted such a charge. Mills v. Ashe, 16 Texas, 304; McGown v. Railway, 85 Texas, 292.

3. It was the duty of defendant to use reasonable care to maintain such a fence as would prevent stock from entering upon its right of way, and the charge of the court placed no heavier burden upon it.

4. The charge laid upon defendant the duty only of using reasonable diligence to maintain a lawful fence. It does not appear that the jack was particularly vicious or that a lawful fence was not sufficient to prevent him from entering upon the right of way. The liability of defendant was, rightly, based upon its failure to use reasonable care in keeping up its fence. Railway v. Walter, 25 S. W. Rep., 163; Railway v. Cash, 28 S. W. Rep., 387.

5. The first special instruction of defendant was properly refused because it did not state the law.

The plaintiff was not charged with the duty of keeping up his own fence or that of defendant. He had the right to allow his jack to run at large if he chose to do so. Railway v. Cash, 28 S. W. Rep., 387.

6. The verdict of the jury should not be disturbed:

(a) Because the evidence shows that the fence had been down for several months;

(b) Because there was evidence tending to show negligence on the part of operatives of defendant's train;

(c) Because the evidence showed that the market value of the jack was between $600 and $1,000.

COLLARD, Associate Justice.—Suit by appellee for damages for the killing of his jack by negligently running defendant's passenger locomotive over him. Trial by jury. Verdict and judgment for plaintiff for $800, with 6 per cent interest from the 16th day of December, 1893, the date of the injury.

Defendant has appealed.

*Opinion.*—The statute (R. S., 4245) makes every railroad company liable to the owner for the value of all live stock killed or injured by locomotives and cars of such railroad; but it is provided that if the company fence the road it shall only be liable in cases of injury resulting from the want of ordinary care.

There was testimony tending to show that the company had fenced the road, but that it had got out of repair, was down in several places, and that the animal killed may have come on to the right of way and the track through an open place in the fence. If such was the case it did not devolve on plaintiff to establish negligence of defendant's employes in killing the jack in order to entitle him to recover, but if the road was fenced and in repair at the time, he could only recover in the event of proof of negligence, or the want of ordinary care of the employes of defendant resulting in the injury.

The writer is of opinion that the testimony did not authorize the submission of the case upon the ground of negligence and that there was error in submitting that question to the jury, as was done by the court, and that for this error the judgment of the lower court should be reversed. The members of the court are not agreed upon this point, though we do agree that the judgment should be reversed, but upon different

grounds. The testimony was amply sufficient to support the verdict upon the issue that the fence was down in places, or a place, when the jack entered, and therefore that the road was not fenced in the sense of the statute. But it is the opinion of the writer that the testimony did not warrant the submission of the question of negligence on the part of the company's servants, and that for this error the judgment must be reversed.

The only testimony as to the negligence of the defendant's servants, besides the fact that the jack was struck and carried from one hundred to one hundred and fifty yards on the pilot of the engine, is that of the defendant's engineer operating the locomotive. This witness testified as follows:

"I was in December, 1893, locomotive engineer in the employ of defendant, and had been for a number of years. I was engineer on the south-bound passenger train running from Taylor to San Antonio on the afternoon and evening of December 15, 1893. I remember my engine striking and killing a jack about one and one-half miles north of Kyle, on the evening or night of December 15, 1893, on what is known as the "Lock Place." It occurred 8:40 P. M., or that late. I was in my cab at my place looking ahead, when I saw about fifty yards ahead an object on the track. The train was running thirty miles an hour. I immediately applied the air brakes and before the train stopped the engine struck the object. I did not reverse the engine, I did not have time. I did not attempt to do so. It was dark, the headlight was burning. The jack was seven or eight feet from the end of the bridge, and seemed to have his feet down between the ties at the south end of the bridge. A bridge at night under the headlight looks dark, and an object lying on it is not easily seen on that account. The earth between the ties shows up white under the headlight, but the space near the bridge and between the ties, shows up dark. I was attending strictly to my business and turned on immediately the air brakes, when I saw the object. Did all in my power to stop. The pilot struck the jack almost in the center and carried him over one hundred yards, when the train was stopped and the crew got off and threw the body to one side. The brakes on the train were the Washington air brakes and had worked well during the trip and continued to work well to San Antonio, the end of the run."

*Cross examined:* "I did not reverse the engine when I saw the object, nor did I attempt to do so. The brakes worked well in slowing up upon reaching the station. This was the only time I had occasion during the trip to use them."

This testimony fails to show the negligence necessary to authorize the submission of the question. It shows that the engineer was strictly performing his duty. "A scintilla of evidence or a mere surmise that there may have been negligence on the part of defendant, clearly would

not justify the judge in leaving the case to the jury; there must be evidence upon which they might reasonably and properly conclude that there was negligence." The above quoted expression is adopted as the true rule by our Supreme Court in the case of Railway v. Faber, 77 Texas, 155, and the court adds: "This rule is expressly followed in several cases and is sustained by the weight of authority." If plaintiff relied upon this branch of his case—the negligence of defendant's servants in running the locomotive upon and killing the animal—it devolves upon him to prove it, so that it could appear beyond a mere surmise or supposition and so that the jury could reasonably conclude that there was such negligence. Tel. Co. v. Housewright, 5 Texas Civ. App., 1; Railway v. Arispe, 81 Texas, 517.

We are agreed that we would set the verdict aside upon the ground that the testimony is not sufficient to show negligence. This is a strong, and, it seems to me, an invincible reason why we should also hold that the question of negligence should not have been submitted to the jury. Both in submitting the issue and in acting upon the motion for a new trial the trial judge has the same question to determine. The legal effect of the testimony is the matter to be determined in both cases, and the writer believes the rule should be that if the court is of opinion that a new trial should and would be granted because of the insufficiency of the testimony or its inherent weakness to support a verdict, he should not submit the issue, though it may be well pleaded. It seems to me absurd to require the trial judge to submit an issue which is not sufficiently proved to support a verdict, or that demands a new trial at the hands of the court. The court has the same question to decide at both stages of the proceeding. It is true the jury might refuse an affirmative verdict, but when the court submits the issue they are permitted by the court to find affirmatively on the issue. I do not see what good result can be secured by submitting an issue merely to see how the jury will decide it, if a new trial is to be granted unless they decide against the proposition. I am aware of the fact that the Supreme Court adopted the opinion of a majority of the Commission of Appeals, Judge Fisher dissenting, where a different view was expressed to that held above (Fitzgerald v. Hart, 17 S. W. Rep., 369); but notwithstanding that decision, it seems to me that the judge should not submit an issue to the jury unless the testimony is sufficient to justify a verdict that would be upheld by the court on a motion for a new trial. It may be said that a party has the right to have a jury, when one is called, pass upon his case, but it seems to me to be idle, if not trifling, for the court to submit an issue which has such meager testimony to support it that the judge would necessarily set aside a verdict found upon it because without sufficient evidence to support it, and which verdict the court had, at the time of submission, correctly determined to set aside. It would be more consistent to refuse a charge upon the issue. It would be as much an invasion of the province of the jury to grant a new trial after

the verdict as it would to refuse to submit the issue upon the ground of insufficient testimony.

Outside of these considerations my opinion is that there was no evidence of negligence on the part of defendant's servants authorizing the submission of the issue.

I believe that if we should hold that the testimony warranted the submission of the issue of negligence, and that the court did not err in submitting it, inasmuch as the verdict was general for plaintiff and the testimony sustained it as it does on the other branch of the case (that the railroad was not fenced as required by statute), the verdict should stand. In my opinion the verdict should stand if it is supported on either branch of the case, if there was no error in submitting the issues. Where there is error in admitting testimony and there is another issue upon which there is no error and there is a general verdict in favor of the party for whom the improper testimony was admitted the rule is to set the verdict aside on appeal; because the verdict may have been reached by the illegal testimony. This rule must rest upon the fact that there was error in admitting the testimony; but if there were no error in admitting the testimony the verdict would be allowed to stand if sufficiently supported by testimony on the other branch of the case. So if there were no error in submitting the issue of negligence, though not sufficient evidence to support the verdict upon that issue, and the testimony amply supported the general verdict on the other issue, as to failing to fence the road, it should not be set aside. It is the error that requires the verdict to be set aside. If there is no error in admitting testimony or in submitting the case, and one theory of the action is sustained by proof, the verdict, though general, should not be set aside because there is an issue correctly submitted upon another theory not supported by the testimony.

I think, however, that there was error in submitting the issue of negligence because the testimony did not warrant it, and therefore that the verdict should be set aside; and I also think that, because of the error in submitting the issue, it is our duty to set it aside upon the ground that the testimony does not support the verdict on that issue. It should not have been submitted.

We concur in finding that assignments of error relating to other matters are not well taken. The judgment of the court below is reversed and the cause remanded.

KEY, ASSOCIATE JUSTICE.—I concur in the reasoning of Justice Collard, and in the holding that it was error to submit the issue of negligence, in the manner that it was submitted. If the doctrine announced by the majority opinion in Fitzgerald v. Hart, 17 S. W. Rep., 369, is to be adhered to, then, when a case involves more than one theory, it ought to be submitted on special issues, if, as in this case, the evidence on one issue is insufficient to support a verdict. It was error in this case to submit the issue of negligence otherwise than as a special issue.

FISHER, CHIEF JUSTICE.—I concur in the views expressed by both of my associates and also as to the disposition of the case.

*Reversed and remanded.*

Delivered December 11, 1895.