## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v. JOHN ADAMS.

Decided March 24, 1900.

**1.  Railway Company—Killing Live Stock—Evidence of Negligence.**

  See the opinion for evidence held insufficient to show negligence on the part of a railway company in the killing of live stock struck by an engine at night on a fenced track and at a curve in the road.

**2.  Same—Gates Left Open—Fenced Right of Way.**

  Where, in an action against a railway company for horses killed on a fenced right of way, the evidence left it uncertain whether the gate through which they entered onto the right of way was so defective that it would not stay closed and was blown open by the wind, or whether a third person left it open, it was not sufficient to authorize a judgment for plaintiff, since the burden was on him to show negligence on defendant's part in such case, and defendant was not liable if the gate was left open by a third person.

**3.  Same—Defects in Gate.**

  Where, for the benefit of one who lived on lands crossed by the railroad, the company puts a sufficient gate in the fence of its right of way and keeps it in substantial repair, it is not liable for the killing of stock on the track resulting from trivial defects in the gate which such owner can remedy practically without labor or expense, and which he has assumed to remedy and treated as too trivial to call to the company's attention.

**4.  Practice on Appeal—Judgment Reversed and Rendered, When.**

  Where, on appeal, a judgment for the appellee is reversed on the facts, the case being tried by the court below without a jury, and there is nothing in the record to indicate that appellee's case was not fully developed on the trial, or that other and stronger evidence can be produced, judgment will be rendered for the appellant without remanding the cause.  Rev. Stats., art. 1027.

Appeal from County Court of Collin. Tried below before Hon. J. H. Faulkner.

*Sam H. West* and *Head, Dillard & Muse*, for appellant.

*Abernathy & Mangum*, for appellees.

FINLEY, Chief Justice.—On the 8th day of August, 1899, appellee instituted suit against appellant in the County Court of Collin County. He alleged in his petition that on May 3, 1899, he was the owner of a mare and colt, and that on that day the same were killed through the negligence of appellant, its agents and servants, in the operation and control of the train. Also that appellant's fence inclosing its right of way through appellee's farm had been negligently allowed to become defective and out of repair, and that on account of said defects his horses got upon the track and were killed.

Appellant answered by general demurrer, special demurrer, general denial, and also by special answer to the effect that the injuries complained of were proximately caused and contributed to by appellee's own negligence and want of ordinary care. That of the defects and causes which produced the injuries complained of, appellee had full notice in time to have prevented the same. That appellant's track at the place where the stock was killed was fenced and supplied with gates as authorized by law, said gates being placed there for passage from one part of plaintiff's land to the other. That if said stock went upon appellant's track and were killed, it was through no wrong of appellant, but caused by their straying through said gate. From a judgment against it the defendant has appealed.

The judge filed these findings of fact:

"1. I find that on the 3d day of May, 1899, in Collin County, Texas, the defendant's locomotive and cars struck and killed a mare owned by plaintiff, of the market value of $125, and that said locomotive and cars at the same time and place struck and killed a two-year-old colt owned by plaintiff, of the market value of $50.

"2. I find that at the time said animals were so killed said defendants and its agents were not using and exercising ordinary care in the operation and control of said locomotive and cars, and that by reason of said defendants and its agents operating said locomotive the animals were killed.

"3. I find that the gate through which the animals entered upon defendant's right of way was at the time of such killing out of repair and defective in construction, and that the same had been in such condition for about four years, and that defendant knew, and by the exercise of ordinary care might have known, that such gate was out of repair and defective in its construction, and failed to fix the same, and that if such gate had not been defective and out of repair, said animals would not have gone on the right of way.

"4. I find that the defendant's railroad runs through plaintiff's farm,

and that the track and right of way were properly fenced, except that the gate through which the animals entered would not catch, but would open either way, and that the wind would blow it open. That such gate was out of repair and defective, and had been in such condition so long that defendant, by the exercise of ordinary care, should have known of such defective condition of the same.

"5. That this gate had been placed there for four or five or six years before the killing of the animals, and that it got out of repair shortly after it was placed there by reason of settling in the ground, and that plaintiff for a while used a wire in trying to keep it shut, and then used stakes in trying to keep it shut. That many people were in the habit of passing over the roadbed and through said gate both night and day, and would often leave the gate open.

"6. That in some way, which is unknown, the animals got out of plaintiff's lot and went upon defendant's roadbed, and that the tracks of the two animals, one on either side of the ties, were traced by plaintiff soon after the killing of the animals. That these tracks of the animals were traced from where they struck the soil near the end of the ties, one on either side, continuously for about 400 yards and to the point where their feet seem to have plowed up the dirt between the rails eight or ten feet from the trestle.

"7. That the fences on both sides of the track at the trestle came up to and joined the trestle.

"8. That there was a curve in the railroad track just east of where the animals entered upon the track, but the point from where they entered upon the track for about a distance of 400 yards to where they were struck was straight, and that the tracks of the two animals on either side of the ties showed that they were running for this distance of about 400 yards.

"9. That the train was being run at the time the animals were struck at about the rate of twenty-five or thirty miles an hour.

"10. That the light used for a headlight at the time of the killing of the animals was burning, but that the engineer operating said train looking down a straight track could not see an animal on the track a sufficient distance to stop his train before he struck it at the rate of speed he was then running.

"11. The engineer operating the train did not see one of said animals, but saw the other one, and ran it down the track for about 400 yards, where it was struck."

*Opinion.*—1. Appellant contends that the evidence did not justify the finding that there was negligence in the operation of the train. Appellee's horses were struck by a passenger train which was running west at a speed of twenty-five or thirty miles per hour on the night of May 3, 1899. The accident occurred at the east end of a trestle, some 400 yards west of the gate through which they had entered upon appellant's right of way. The tracks of the horses indicated that they began to run at appellee's barn lot gate, ran through the field adjoining the railroad

and through the gate at the private crossing onto appellant's right of way; that after they reached the right of way one horse ran on one side of the track and the other on the other side, both on outside of the ends of the ties, down to where the fences inclosing the right of way join onto the east end of the trestle. At this point, eight or ten feet east of the east end of the trestle, there were tracks or marks between the rails, and at this point the dirt between the rails was cut up and there began to be blood on the ties and rails showing that here the accident occurred. The bodies of the animals were carried across the trestle about 100 feet and deposited one on each side of the track. Appellant's track is fenced through appellee's inclosure, and gates have been placed on each side of the track for appellee's convenience in passing from one portion of his farm to the other. It was through one of these gates that the horses entered upon the right of way. The fence on each side of the track is fifty feet from the center of the track, but at the trestle runs up to and joins on to the east end of the trestle. There is a curve in the railroad track, so that an engineer on an engine running west could not distinguish on the track an object between the gate and the trestle until the engine reached the gate.

The only witness to the accident is the engineer, whose testimony is, in effect, that the headlight in his engine was burning; that he was keeping a lookout; that just about the end of the trestle he saw an animal jump right on the pilot of his engine; that he put on the brakes; that the animal then fell off and he loosed the brakes again; that at the speed he was running he could not have stopped his train in much less than 400 feet. That the animal must have gotten upon the track just as he struck it; that he could not tell whether it was a horse or a cow; that he did not sound the whistle or the stock alarm because he did not have time and didn't see the animal in time.

Manifestly the finding is based upon the idea that the horses ran before the engine and train from the gates to the trestle, and that the engineer saw them and ran them down, or that he was negligent in not seeing them. The only basis for this theory is the fact that the tracks of the horses on either side of the railroad show that they were running, and the inference is drawn that they were caused to run by fright of the train. The testimony of appellee, however, shows that their tracks showed that they ran from his lot to the gate opening into the right of way and continuously to the point where they were struck by the engine.

In the case of McGhee v. Guyn (Ky.), 32 Southwestern Reporter, 615, a similar state of evidence was passed upon, the court saying: "The killing occurred on a rainy, dark night in December. No one saw it except the engineer and fireman. They were introduced by appellant, and explained how the killing occurred. According to their testimony the stock came directly across the track while the train was running some fifteen or eighteen miles per hour, and those in charge only saw it some sixty or eighty feet away—too late to have stopped the train and prevented the accident, although every effort was made to do so. There was no contradictory evidence offered, as there could not well be

under the circumstances. Some tracks of the stock appear to have been made along the railroad, presumably when the animals were running from the train, and it is thought from this the jury might fairly infer that the trainmen must have seen them in time to have stopped the train and prevented the killing. This conclusion would seem, however, to be based on a mere conjecture or suspicion, and we are not inclined to think it ought to override the positive testimony of eye witnesses. * * * After those who were in charge of the train at the time of the occurrence are introduced by the company, and are made to explain the circumstances, and do so in such a manner as to show an unavoidable killing, we know of no ruling by which their testimony may be wholly disregarded."

Again, in the case of Railway v. Mitchell, 33 Southwestern Reporter, 622, the following was the language of the court: "The killing occurred at 9 o'clock at night. * * * The witnesses for plaintiff testified that tracks showed that the horse ran upon the track from the place where the animal got upon it 100 to 125 yards before being struck by the train, which was going in the same direction (at a speed of thirty-five miles per hour). Witnesses for plaintiff do not, nor could they, prove that the horse was killed through negligence of those in charge of the train, for, not being present, they could not say whether the engineer did discover, or in the exercise of proper diligence could have discovered, the horse on the track in time to prevent the collision, having due regard for the safety of passengers. Consequently we are forced to look to the testimony of the engineer, who is neither contradicted nor discredited. He states that the train was within 100 feet of the place where and when the horse came upon the track, and it was impossible to stop or check the train so as to prevent it striking the horse. * * * When the only testimony bearing affirmatively and directly upon the issue of facts involved is without apparent reason totally discredited and ignored by the jury, then it becomes the duty of the court to set aside their verdict." See also Railway v. Hall, 12 Texas Civ. App., 11. We hold that the evidence did not warrant the finding that the train was negligently operated.

2. It is insisted that the facts in reference to the condition of the gates did not justify the conclusion that the defendant was guilty of negligence which caused the injury. In the main the facts in relation to this feature of the case appear from the findings. Whether the gate was left open by some one passing through it, or came open by reason of the fact that the posts had sunken so that the latch would not catch and hold, is purely a matter of conjecture under the evidence. Appellee testified that persons were almost continually passing through the gates until late in the night; that they were not careful to close the gates, and that they were often left open. He also testified to the good condition and sufficiency of the fences and gates, except that the posts of the gate settled to the extent the latch would not catch and hold when opened and let fly back. This condition had existed since shortly after their construction, which was five or six years previous. He used a wire to

The duty to show negligence on the part of the defendant causing the injury was upon the plaintiff. If it be assumed that it was negligence in the defendant company to let the gate remain in the condition stated, it can not fairly be said that it was shown that the killing of the animals was due to this negligence. It is quite as probable that the gate was left open by some person passing as that it was blown open by a strong wind, which appellee testified he thought might occur. If one deduction was as reasonable as the other, and this is the most that can be said of the evidence in appellee's favor, that state of proof would not discharge the burden resting upon appellee. Railway v. Johnson, 39 S. W. Rep., 323.

Again, these gates were erected for appellee's benefit, and it is not believed that the duty rested upon the railway company to see to it that they were kept closed. Railway v. Glenn, 8 Texas Civ. App., 301. Of course the gates constitute a part of the fence, and we regard it as the duty of the railway company to make them sufficient in the first instance, and to repair substantial defects which arise by reason of their use. But where a trivial defect occurs, like that in question, which the landowner, for whose benefit the gates are put in, can remedy practically without labor or expense, we do not think the company should be held liable upon the theory of not having a sufficient fence inclosing the right of way. Railway v. Bellows, 39 S. W. Rep., 1000. Certainly this view should obtain when the landowner has himself assumed to remedy the defect, and has treated it as too trivial to call to the attention of the defendant. Railway v. Mosier, 114 Ind., 447.

It results from what we have said that the proof was not sufficient to support either of the grounds of negligence upon which the judgment is based. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

RAINEY, CHIEF JUSTICE.—On a former day of this term we remanded this cause for the reason that the proof as to negligence of defendant was not sufficient to support the judgment for plaintiff. We are now asked by appellant to reconsider our action in remanding the cause, and to render a judgment for appellant. Upon reconsideration, we are of opinion that the motion should be granted.

Article 1027, Revised Statutes, provides that when a judgment of the lower court is reversed, this court shall render such judgment as the court below should have rendered, "except when it is necessary that some matter of fact be ascertained, or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below." The controlling issue in the case is whether defendant's negligence was the cause of the stock being killed.

The cause was tried by the court without a jury, and under the evidence the court should have rendered judgment for defendant. There is nothing in the record to indicate that the plaintiff's case was not fully

The cause was tried by the court without a jury, and under the evidence the court should have rendered judgment for defendant. There is nothing in the record to indicate that the plaintiff's case was not fully developed, or that it is probable on another trial other and stronger evidence as to defendant's negligence could be produced. This being the state of the record we feel it our duty to here render judgment for the appellant. Meyer v. Orynski, 25 S. W. Rep., 655; Stevens v. Hicks, 38 Texas, 656; Maverick v. Routh, 7 Texas Civ. App., 669; Williams v. Jones, 33 S. W. Rep., 1092.

The motion of appellant is sustained, and the judgment will be reversed and here rendered for appellant.

*Motion granted. Reversed and rendered.*

Application for writ of error dismissed by Supreme Court for want of jurisdiction.