OLTMANNS BROS. v. POLAND.†

(Court of Civil Appeals of Texas. Austin. Nov. 29, 1911. Rehearing Denied Jan. 10, 1912.)

1. EVIDENCE (§ 317*) — HEARSAY — DEPOSITIONS.

Where, in an action for breach of warranty in the sale of a stallion, a witness in a deposition taken by plaintiff testified that witness had bred the stallion to sixteen mares, and obtained only four colts, and in a second deposition taken by defendant testified that he knew nothing of his own knowledge as to the number of colts born, but that all that he knew was that only four of the mare owners had paid for colts, and that the remainder reported that their mares bred to the horse had not brought colts, such second deposition showed that the witness' testimony was hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

2. TRIAL (§ 138*)—QUESTIONS FOR JURY—ADMISSIBILITY OF EVIDENCE — ADMISSION — QUESTION FOR COURT.

The admissibility of testimony being for the court, and not for the jury, it was improper for the court to submit to the jury the question whether the answers given by a witness in his original deposition were hearsay.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 322; Dec. Dig. § 138.*]

3. SALES (§ 425*) — IMPLIED WARRANTY — SOUND PRICE—REMEDY OF BUYER.

In a sale of chattels, a sound price warrants a sound article, and when a purchase is made without a special warranty, if the article proves unfit for the purpose for which it has been sold, the buyer may return it and demand a return of the purchase money, or he may keep the article, and recover as damages the difference between the value of the article as represented by the implied warranty and its real value.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1207, 1208; Dec. Dig. § 425.*]

4. SALES (§ 426*)—SPECIAL WARRANTY—PERFORMANCE.

Where a contract for the sale of a stallion contained a written guaranty that he should be a satisfactory and sure breeder, provided he had proper care and exercise, and, if he failed, the sellers agreed to take him back and give to the buyer any stallion of equal value, provided he was returned to the sellers' barns within a specified time in as sound and healthy condition as he was at the date of the contract, such warranty was exclusive; and hence, in case of an alleged breach thereof, the buyers were not entitled to rescind and recover back the purchase price in the absence of proof that the horse had been returned to the sellers' barns within the time and in the manner provided by the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1209; Dec. Dig. § 426.*]

5. SALES (§ 426*) — SPECIAL WARRANTY — BREACH—RETURN OF PROPERTY.

K., having an interest in a stallion alleged to belong to defendants O. Bros., sold a half interest to plaintiff on the representation that K. would purchase the other half, receiving a special warranty from O. Bros. that the horse was a satisfactory and sure breeder, and, if he failed in this regard, they would take him back and give him another horse of equal value, provided the horse sold was returned to O. Bros. at their barns in a sound and healthy condition by April 1, 1908. The horse not proving a sure breeder, plaintiff delivered him to K. in the fall of 1908, stating that he was not satisfactory, and that he wanted his money back. Held, that K. was not the agent of O. Bros. to receive the horse, and that plaintiff's delivery to K. was not a compliance with the warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1209; Dec. Dig. § 426.*]

6. APPEAL AND ERROR (§ 1175*)—REVIEW—REVERSAL—RENDITION OF JUDGMENT.

Where plaintiff had not complied with a special written warranty given on the sale of a horse so as to entitle him to rescind, as against the sellers, the court should have granted the seller's motion for judgment in an action on the warranty, and, not having done so, judgment would be rendered for them on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from District Court, Parker County; J. W. Patterson, Judge.

Action by C. S. Poland against Oltmanns Bros. Judgment for plaintiff, and defendants appeal. Affirmed in part, and reversed and rendered in part.

Wm. J. Berne, for appellants. Stennis & Wilson, for appellee.

### Findings of Fact.

JENKINS, J. The trial court submitted this case upon special issues, and from the verdict of the jury on said issues, and from the evidence as contained in the record, we make the following findings of fact: Oltmanns Bros. of Watseka, Ill., were dealers in imported stallions. They had a stable at Ft. Worth, Tex., and J. A. Hill was in charge of their Texas business at said place. It was his custom to employ agents to take horses out for sale, they paying all expenses and receiving as compensation a portion of the proceeds of sale made by them, usually about one-half. R. R. Kincannon was employed as such salesman, and had sold several stallions for Oltmanns Bros. He took the imported German coach stallion Theodore to Weatherford for the purpose of selling him. The evidence leaves it uncertain as to whether Theodore at this time was the property of Oltmanns Bros. or of Kincannon, in this: Kincannon testified that Oltmanns Bros. had made a contract with him, through Hill, to sell two stallions, and that, if he sold the first one at the price fixed by Hill, he was to turn over all of the proceeds of such sale to Hill, and was to have all of the proceeds of the sale of Theodore as his compensation. Hill testified that for services rendered by Kincannon in the sale of a former stallion, and for the surrender of a note for $750 received by Kincannon on said sale, he sold Theodore to Kincannon. As we understand the case, it is immaterial which of these theories is correct as to the ownership of said horse, inasmuch as the undisputed facts show that Hill authorized Kincannon to sell Theodore as the property of Oltmanns Bros. and to give to the purchaser a guaranty from Oltmanns Bros. as hereinafter set out, so that, in either event, so far as Poland is concerned, Kincannon was the agent of Oltmanns Bros. for the sale of this horse. Kincannon stated to Poland that the price for a horse of this character was $3,000, which was true; but that on account of a slight defect in the horse's ankle, and on account of his previous dealings with Oltmanns Bros., they had consented for him to sell this horse for $2,700, and that if Poland would purchase a half interest in said horse, and execute his notes therefor for $1,350, with his aunt as security, he, Kincannon, would purchase the other half interest, and give his father as security on his note. Poland accepted this proposition, and exe-

cuted the notes. Kincannon did not execute any notes for the reason either that the horse was his or that he was entitled to all the proceeds of said sale. Poland's notes were made payable to Oltmanns Bros., and were indorsed by them, without recourse, to Kincannon, who thereafter sold them before they were due, and Poland has paid said notes, and brings this suit against Oltmanns Bros. and R. R. Kincannon to recover the amount that he has paid on said notes, with interest thereon, upon the ground that the warranty to said horse has failed, and upon the further ground that he was induced to purchase said horse by the fraudulent misrepresentations made by Kincannon, and that said Kincannon was acting therein as the agent of Oltmanns Bros. Kincannon, as the agent of Oltmanns Bros., was authorized to give the following warranty: "Ft. Worth, Texas and Watseka, Ill. Feb. ——, 1907. Guaranty on the imported German coach stallion 'Theodore,' No. 2419. We have this day sold the imported German coach stallion, named 'Theodore,' No. 2419 to the —— Horse Improvement Company of ——, Texas, and we guarantee said stallion to be a satisfactory and sure breeder, provided he has the proper care and exercise. If the said stallion fails to be satisfactory and a sure breeder with the above treatment, we agree to take the said stallion back and give to the said company another stallion of equal value, provided he is returned to us at our barns in as sound and healthy condition as he is now by April 1st, 1908. [Signed] Oltmanns Bros." Kincannon was not the agent of Oltmanns Bros. for the purpose of representing himself as a joint purchaser of said horse, and it does not appear that Oltmanns Bros. knew such to be the fact.

The jury in response to a special issue submitted by the court found that said horse was not a satisfactory and sure breeder, and further found that he had proper care and exercise. There is sufficient evidence to sustain this finding, aside from the hearsay evidence of the witness Hale, but we cannot say that the jury would have made such finding but for such hearsay evidence, as the same is very material, and the evidence upon this point, outside of the testimony of the witness Hale, is rather meager. Under an agreement between Poland and Kincannon, Poland was to keep the horse for the season of 1907, and Kincannon was to keep him for the season of 1908. Poland turned the horse over to Hale during the months of April, May, and part of June. Hale appears to have been a competent party for such purpose, and to have given the horse proper treatment. Poland himself bred the horse to only seven mares. Hale bred him to sixteen, and it does not appear that any other mares were bred to him during said season. Poland in the fall of 1907 turned the horse over to Kincannon, telling him that

he was not a satisfactory breeder, and that he wanted his money back. Kincannon called Poland's attention to the guaranty, and stated that, if the horse was not a satisfactory breeder, they could get another one. Kincannon did not promise to return the horse to Oltmanns Bros., and the horse was never returned to them by either Poland or Kincannon.

There was a judgment against Oltmanns Bros. and against Kincannon for the amount sued for, from which judgment Oltmanns Bros. have appealed.

### Opinion.

[1] 1. The witness Hale testified by deposition only. His depositions were twice taken in this case—first, by the plaintiff, and about six months thereafter by defendant. In the first deposition Hale stated, in substance, that he had bred said horse to sixteen mares, and that only four of them brought colts, and further testified that he did not consider said horse a sure and satisfactory breeder. This opinion was based upon the fact, as stated by him, that only four out of sixteen mares bred to said horse brought colts. In the subsequent deposition Hale stated that he knew nothing of his own knowledge as to how many mares bred to said horse brought colts, that all he knew about the matter was that four of the owners of said mares had paid for colts, and that the remainder reported that their mares had not brought colts. The mares were bred upon condition that the service should be paid for provided the mares were foaled by said horse. When the first deposition of the witness Hale was offered by plaintiff, the defendant objected upon the ground that his statements therein with reference to the number of mares bringing colts were hearsay; and in support of said statement, and for that purpose only, read to the court the second deposition of said Hale, as above stated. The court overruled appellant's objection to said testimony, and permitted the testimony of said Hale to be given to the jury, and, in explanation thereof, said: "If the witness was on the stand, and it appeared that the evidence was all hearsay, I think it would be the duty of the court to exclude it. I think there is a vast distinction between that and the taking of a deposition of the witness twice, and I believe the matter ought to go to the jury and let them decide whether it is hearsay or not. And I think, further, that if all this man knows about it is hearsay that ought not to be considered; but the deposition is taken on one occasion, and it does not develop that it is hearsay evidence, and the other deposition is taken about six months thereafter. I will overrule the objection and admit the deposition on the theory that where there is nothing in the deposition showing it is hearsay, and afterwards the other party takes a deposition and develops that the answers in the original deposition are hearsay, that is a matter to go to the jury, and the objection is to the weight of the evidence." We do not see that there is a "vast distinction," or any distinction at all, between a witness upon the stand showing that his testimony is hearsay, and that fact being developed by a subsequent deposition. At the time the testimony was offered it was clear that it was hearsay, and ought to have been excluded.

[2] The admissibility of testimony is a matter for the court, and not for the jury. It is a common practice to waive a jury and submit matters of fact, as well as of law to the court, but we know of no authority for waiving the court and submitting matters of law as well as of fact to the jury.

2. The gist of this case is the proper construction of the warranty given by Oltmanns Bros. and appellee's rights thereunder, as shown by the undisputed facts of this case.

[3] It is a rule of the common law in the sale of chattels that a sound price warrants a sound article; and where a purchase is made without any special warranty, if the article proves unfit for the purpose for which it was sold, the purchaser may return the same and demand a return of the purchase money, or he may keep the article and recover as damages the difference between the value of the article as represented by the implied warranty and its real value. If he seeks a rescission of the contract, he must return the article purchased. Stewart v. Railroad Co., 62 Tex. 248, 249; Milligan v. Ewing, 64 Tex. 260; Coddington v. Wells, 59 Tex. 50.

[4] But in the sale of personal property, as in all other transactions, the seller has a right to define his liability by a special warranty, and provide for the measure of damages or the manner of fulfilling his warranty. This was done in this case by Oltmanns Bros. The guaranty provides that, "if the said stallion fails to be a satisfactory and sure breeder, with the above treatment, we agree to take the said stallion back and give to said company another stallion of equal value, provided he is returned to us at our barns in as sound and healthy condition as he is now by April 1st, 1908." The undisputed evidence shows that said barns were located at Ft. Worth, Tex. The case of Walters v. Ackers, 101 S. W. 1181, 31 Ky. Law Rep. 259, by the Court of Appeals of Kentucky, is on all fours with this case. In that case Crouch & Son, dealers in stallions, sold a horse Sancho to Van Nort, guaranteeing in writing said stallion to be a "satisfactory, sure breeder, provided the said stallion keeps in as sound and healthy a condition as he now is, and has proper care and exercise. If the said stallion should fail to be a satisfactory and sure breeder with the above treatment, we agree to take said stal-

lion back and give the said J. C. Van Nort another stallion of equal value in his place, provided the said stallion is returned to us at Lafayette, Ind., in as sound and healthy condition, and in as good flesh as he is now, by June 1st, 1905." The horse was never returned to Crouch & Son, but recovery was sought against them on the ground that the horse had failed to prove a satisfactory breeder. The court said: "If the horse was not a satisfactory and good breeder Crouch & Son agreed to take him back and give Van Nort another stallion of equal value in his place, provided the said stallion was returned to them in Lafayette, Ind., by June 1, 1905. * * * This writing contained the entire contract between them, and by its terms each must abide. * * * If he wished to avail himself of the guaranty given by Crouch & Son, it was his duty to have ascertained before June 1, 1905, the facts and return the horse. Having failed to do this, he is without remedy on the contract. Contracts containing similar provisions to this have been before this court in a number of cases, and it has uniformly been ruled that, when the parties to a contract agree upon the remedies that accrue for a breach of it, these remedies constitute the only relief in the particular that the purchaser has, and he must look to his contract and be governed by its stipulations." In Wisdom v. Nichols & Shepherd Co., 97 S. W. 21, 29 Ky. Law Rep. 1132, the same court said: "The contract here affords the purchaser a remedy if the warranty is broken that will at once relieve him from all liability. He can return the machine and demand his purchase notes, thereby canceling the contract; but, if he elects to retain the property in its defective condition, he must pay the purchase price." For other decisions upon this point, see Mfg. Co. v. Stevens, 60 S. W. 350; Aultman v. York, 1 Tex. Civ. App. 484, 20 S. W. 851; Gaar v. Hodges, 90 S. W. 580, 28 Ky. Law Rep. 889; Shearer v. Gaar, 41 Tex. Civ. App. 39, 90 S. W. 684; Mfg. Co. v. Griffin, 16 Tex. Civ. App. 188, 40 S. W. 755.

Appellee contends that these cases are not applicable to this case, inasmuch as there was no fraud in said cases, and fraud is alleged, and, as appellee contends, is proven in this case. There was no fraud upon the part of Oltmanns Bros. in inducing Poland to accept the said guaranty. It does not appear that the terms thereof were misrepresented or concealed, or that he did not in fact fully understand them. As to the alleged fraud of Kincannon in representing to Poland that he was purchasing a half interest in the said stallion, we do not see how that can affect Oltmanns Bros. or deprive them of the benefit of the written contract as to guaranty tendered by them and accepted by Poland, with full knowledge, so far as the evidence indicates, of its contents and in full reliance thereon. The testimony shows that the purpose of Oltmanns Bros. in allowing said horse to be sold under their guaranty was that a guaranty by them would be more satisfactory to the purchaser than a guaranty executed by some one who was not a dealer in such horses, or who, perhaps, might not be financially responsible. Oltmanns Bros. are bound by the terms of said guaranty, and so also is Poland.

[5] Appellee contends that the condition for the return of said horse was fulfilled when he delivered him to Kincannon in the fall of 1908, and stated to Kincannon that the horse was not a satisfactory breeder, and that he wanted his money back. Kincannon was not the agent of Oltmanns Bros. to receive said horse, and did not promise appellee to return said horse to Oltmanns Bros.; but was the agent of Poland in this matter. The contract expressly provided that said horse should be returned to Oltmanns Bros. at their barn, which, as before stated, is shown to have been located at Ft. Worth, Tex.

[6] 3. Appellants requested the court to peremptorily instruct the jury to return a verdict in their favor, and now move this court to reverse and render this case. The court should have so instructed the jury, and should have rendered judgment for Oltmanns Bros. upon such instructed verdict. Having failed to do so, it becomes our duty to reverse and render this case as to Oltmanns Bros. Rev. Stat. art. 1027; Tillman v. Erp, 121 S. W. 552; Henne v. Moultrie, 97 Tex. 218, 77 S. W. 607; Maverick v. Routh, 7 Tex. Civ. App. 675, 23 S. W. 596, 26 S. W. 1008; Adoue v. Tankersley, 28 S. W. 346; Baggett v. Sheppard, 110 S. W. 952; Railway Co. v. Adams, 24 Tex. Civ. App. 231, 58 S. W. 1038; Parrish v. Frey, 18 Tex. Civ. App. 278, 44 S. W. 322.

In view of the disposition which we make of this case, it is unnecessary for us to pass upon other assignments of error.

For the reasons herein stated, the judgment of the court below is reformed and here affirmed as to Kincannon, and reversed and rendered in favor of Oltmanns Bros.

Affirmed in part, and reversed and rendered in part.