FT. WORTH & D. C. RY. CO. v. SCHEER.
(No. 635.)

(Court of Civil Appeals of Texas. Amarillo. June 20, 1914. Rehearing Denied Oct. 10, 1914.)

1. RAILROADS (§ 440*)—TRIAL (§ 255*)—ACTION FOR VALUE OF ANIMALS KILLED—BURDEN OF PROOF—INSTRUCTIONS—REQUESTS.

In an action for the value of cattle, which went upon railroad tracks through an open gate and were killed or injured, the burden was upon the railroad company to exhibit the defense by its pleading, evidence, and a special charge that it was the duty of the adjoining landowner to maintain the gate in a proper condition, or that the open condition of the gate was due to some other agency.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1570–1574; Dec. Dig. § 440;* Trial, Cent. Dig. §§ 627–641; Dec. Dig. § 255.*]

2. RAILROADS (§ 447*)—ACTIONS FOR VALUE OF ANIMALS KILLED—INSTRUCTIONS.

In an action for the value of cattle, which went upon railroad tracks through a gate and were struck by a train, where, though there was evidence in the nature of a conclusion that the gate was at a private crossing, there was no evidence that it was constructed for the benefit of any adjoining landowner, nor that it was the landowner's duty to maintain the gate in a proper condition, and there was evidence that the gate fastening was defective, an instruction authorizing a recovery if the right of way was not fenced in such a manner as under ordinary circumstances to effectually turn live stock of an ord'nary disposition was properly given.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1642–1650; Dec. Dig. § 447.*]

3. RAILROADS (§ 447*)—ACTIONS FOR VALUE OF ANIMALS KILLED—INSTRUCTIONS.

There was no conflict between an instruction authorizing a recovery if the right of way was not fenced in such a manner as under ordinary circumstances to effectually turn live stock of an ordinary disposition, and an instruction that if the gates at the crossing were kept in proper repair it was not the railroad company's duty to keep them shut, and that if the cattle entered upon the right of way through the gates while they were open, and were killed, to find for defendant, as such instructions were in conformity with the issues affirmatively and negatively presented.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1642–1650; Dec. Dig. § 447.*]

4. RAILROADS (§ 442*)—ACTIONS FOR VALUE OF ANIMALS KILLED—EVIDENCE.

In such action, evidence as to the condition of the fence and of the gate was material and relevant, and properly admitted.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1596–1607; Dec. Dig. § 442.*]

5. RAILROADS (§ 447*)—ACTIONS FOR VALUE OF ANIMALS KILLED—INSTRUCTIONS.

In an action for the value of cattle, which went upon railroad tracks through a gate and were killed by a train, where there was evidence that the gate fastenings were insecure, that it had no regular latches, but was merely fastened with a piece of wire too short to make a complete hook, and that it could be opened by a touch of the hand, an instruction that it was not the company's duty to remedy trivial defects, but only to repair substantial defects, was properly refused.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1642–1650; Dec. Dig. § 447.*]

Appeal from Clay County Court; W. T. Allen, Judge.

Action by C. S. Scheer against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Thompson & Barwise, of Ft. Worth, and Taylor & Humphrey, of Henrietta, for appellant. Wantland & Parrish, of Henrietta, for appellee.

HENDRICKS, J. The appellee filed this suit against the appellant, the Ft. Worth & Denver City Railway Company, in the county court of Clay county, alleging in substance that the defendant's train killed 10 head of steers and crippled another owned by him, by striking them with its engine; that the appellant was guilty of negligence, first by not having its track properly fenced, and, second, on account of the engineer failing to stop said train and avoid striking said cattle.

[1-3] Appellant criticised the first paragraph of the court's main charge to the jury, which paragraph is as follows:

"If you believe, from the evidence, that on or about the 21st day of May, 1913, that defendant killed 9 head of plaintiff's cattle and injured 2 head, by striking them with its locomotive or cars, and you find that, at the time said cattle were struck, defendant's right of way was not fenced in such a manner as under ordinary circumstances to effectually turn live stock of an ordinary disposition and docility, * * * then you will return a verdict for the plaintiff."

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appellant insists that there was no evidence that, at the place the cattle were struck, the fence on the right of way was not in good repair, or was not such a fence as would turn cattle of ordinary disposition, and that said charge is in conflict with special charge No. 5, requested by it, and given by the court, which is as follows:

"If you find and believe from the evidence that the gates at the crossing where plaintiff's cattle entered were kept in proper repair by the company, then it was not the duty of the defendant to keep said gates shut, and if said cattle entered said right of way through said gates, while the same were open, and were killed, then you will return a verdict for the defendant, unless you find that said killing of said cattle could have been avoided on the part of the engineer by the use of reasonable care."

The evidence discloses that the cattle entered the right of way at a private crossing through an open gate; but the record is devoid of any testimony that this gate, which was a part of the right of way fence, had been constructed at the instance, or for the benefit of, any adjoining landowner; nor does the testimony show that it was the duty of any adjoining landowner, or the appellee, who was the lessee of a pasture of such adjoining landowner, to maintain the gate in a proper condition to exclude the cattle. In the case of Texas & Pacific Railway Co. v. Corn, 110 S. W. 486, wherein it was assigned that the trial "court erred in submitting to the jury the issue of negligence with reference to the condition of the gate," Justice Stephens said:

"The circumstances indicated that some one in passing through the gate had probably neglected to lift it up and latch it"—holding that "the defective condition of the gate would be the proximate cause, in part at least, of its being left unfastened," and further saying: "If * * * the gate was substantially out of fix, as appellees' evidence undoubtedly tended to prove, and the evidence failed to show that the gate had been put in for the convenience of appellees, or that they had undertaken to maintain the same, we do not very clearly see how appellant, in maintaining its right of way fence, is to avoid the consequence of a negligent failure on its part to keep the gate in such repair as to render it reasonably sufficient under the circumstances to exclude cattle in the adjoining pasture from its right of way."

The Supreme Court, in the same cause (Texas & Pac. Ry. Co. v. Corn, 102 Tex. 194, 114 S. W. 103), in affirming the decision of the Court of Civil Appeals, said:

"We are not prepared to hold that under all the circumstances the company would have been liable for the gate being left open, but to fence a track means that it must be securely fenced so as to prevent the ingress and egress of live stock. If this is not done, it can hardly be deemed a legal fence."

The Supreme Court also intimated in that cause that the railway company would not be liable if the gate was left open by third parties, or by the appellee, the owner of the land, it being a gate for his accommodation, but that there was no such evidence in that case, and therefore "the company should be held responsible." On the facts, that case seems to be quite similar to the instant case.

Referring to appellant's assignment, and its proposition thereunder germane to the particular question, there is no criticism of the court's charge, except that the evidence was insufficient to show that the fence was not in good repair, or was not such a fence as would turn cattle of ordinary disposition, and that the main charge is inconsistent with the special charge. There is no assignment in the brief challenging the action of the court in any manner on account of his failure to submit an issue as to the negligence of some third person with reference to said gate. The testimony indicates that for several years the fastening of this particular gate was insecure, and in the same condition disclosed at the time the injury to plaintiff's cattle occurred. The railway company fails to show that the fastening, at the time this fence and gate were constructed, was of any different character than the one at the time of the injury. There is no testimony that any other person except the railroad company owed the duty to keep up the gate, or repair the fastening, if defective. The Supreme Court, in the case of Texas Central Railway Co. v. Pruitt, 101 Tex. 553, 109 S. W. 926, settled the proposition in this state that the fence contemplated by the statute must not only be erected by the railway company, to obtain the immunity granted by the statute with reference to damages for injury to stock, but must be duly maintained as a sufficient fence; and, as expressed by Chief Justice Gaines:

"That is, that it shall be sufficiently inclosed to prevent the passage of live stock, and not that it [the railroad company] shall exercise ordinary care to see that it is maintained in that condition."

From these premises, sound under the decisions, the burden was upon the railway company to exhibit the defense by its pleading, by the evidence, and a special charge, as to any duty of the adjoining landowner, and by implication the appellee, as lessee, and bring the same forward for review in the event of the refusal of such an issue; likewise as to the submission of an issue as to any other agency causing said gate to be opened, contributing to the injury. In the condition of the prima facie case of negligence, suggested by this record, with reference to the defective condition of said fence on account of a defective gate fastening, which is at least a contributing and proximate cause to the injury, the statutory duty of the railway company applies with reference to the sufficiency of the fence, and if not fulfilled the immunity does not exist. There is a statement in the nature of a conclusion that this gate was at a private crossing; except from that statement we are not advised that this crossing was at a place where the company was required to keep one, or was required to build the same upon the demand contemplated by the statute. In the case of Texas & Pacific Railway Co. v.

Webb, 102 Tex. 212, 114 S. W. 1172, the Supreme Court of the state said:

"The right of way was fenced, and the fence was in good condition, except that a gate in it had been left open. Why the gate was kept there is not shown, except that it was for a neighborhood road, traveled by people crossing the right of way and track. The crossing was not upon a public road, and it is not shown that it was at a place where the company was required to keep one. * * * The liability must be held to be the same as if the track had not been fenced at all at that place."

We think it would have been better for the railroad company to have more fully disclosed the conditions under which the crossing was constructed across the track at the place indicated.

That part of the assignment questioning said first paragraph, on the ground that it is in conflict with special charge No. 5, is hypercritical. The charges are in conformity with the issue affirmatively and negatively presented, upon which the cause seems to have been tried.

[4] The second assignment of error, challenging the action of the court in admitting the testimony of certain witnesses as to the condition of the fastenings of the gate, are overruled, as we clearly think such testimony was material and relevant.

[5] Appellant complains that the court erred in refusing to submit the following special charge:

"You are instructed in this case that it was not the duty of the railroad company to remedy trivial defects in the gates across the private crossings where plaintiff's cattle entered said right of way, and it was only the duty of said defendant railway company to keep in repair the substantial defects of said gates, and if you find that said company performed its duty in that respect, then you will return a verdict for defendant, unless you find that the engineer was negligent in killing said cattle under the charge heretofore given you."

Appellant cites the case of St. Louis & Southwestern Railway Co. of Texas v. Adams, 24 Tex. Civ. App. 231, 58 S. W 1036, on the question that it was not the duty of the railway company to remedy trivial defects in the fastenings of a gate erected at a private crossing for the benefit of adjacent landowners.

We are not placing ourselves in the attitude of criticising that case, but merely quote the evidence with reference to the character of the defect exhibited here. Charlie Graves, witness for appellee, testified:

"The gate was not in good condition; that is, the fastening was not secure. It had a smooth wire, just hooked into a wire around the post to which the gate shut, and the wire was small and too short to reach around the wire it hooked into, and we fastened the gate by hooking the small wire into the other wire with a sloping hook, as the wire was not long enough to turn back and fasten securely. The gate opened very easily. You could touch it with your hand and it would swing open. * * * The piece of wire used in fastening the gate was small and so short that if it had been crooked clear back, so as to make a complete hook, it would

not have reached far enough to have reached the wire it was to hook onto."

J. T. Graves, for appellee, testified:

"I am familiar with the gate, * * * and I considered that there was no gate. The fastening of the gate was just a little piece of wire, which fastened onto a wire around the post to which the gate was supposed to shut; but the gate did not reach that post, and the little piece of wire was too short to reach from the gate to the post and around the wire on the post and fasten securely;" and further said the small wire "fastened over with a sloping or gradual crook, and [the gate] was easily opened."

The section foreman for the railway company testified that he often found the gate open, and that two or three days before the particular injury the gate was open. He said:

"I do not know about the fastening. They did not have any regular latches on them. The gate was open when I went back to track the cattle."

Of course, in the condition of this record, we are not advised whether this gate, which could be opened by a touch of the hand, was left open by some third party, or whether it had blown ajar. Applying the arbitrary rule promulgated by the statute with reference to the maintenance of a secure fence, and considering the condition of the testimony, which is practically undisputed, with reference to the insecure fastening upon this particular gate, without any regular latches upon the same, as testified by the section foreman, the trial court did not err in rejecting the special charge requested by appellant, and the cause is in all things affirmed.