DELOS F. SLAYTON v. FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD COMPANY.

FILED JUNE 5, 1894. No. 5444.

1. **Negligence:** EXPLOSIVES: PERSONAL INJURIES: EVIDENCE. Where the evidence showed without question that torpedoes necessary to the operation of its railroad were deposited and kept in defendant's untenanted section house, all the doors and windows of which were securely fastened shut, and that access to and the removal of these torpedoes were effected by children, who unfastened and opened one of the windows for those, among other improper purposes, *held*, that defendant is not liable for an injury caused by the subsequent explosion of one of said torpedoes procured and removed as aforesaid.

2. **Trial:** DIRECTING VERDICT. The trial judge should without hesitation direct a verdict for the defendant when there is no evidence to support plaintiff's alleged cause of action.

ERROR from the district court of Brown county. Tried below before KINKAID, J.

*C. H. Bane*, for plaintiff in error.

*John B. Hawley, B. T. White, L. K. Alder*, and *W. J. Courtright, contra.*

RYAN, C.

This action was brought by plaintiff in error for injuries sustained by Delos F. Slayton. After all the evidence had

been introduced the court gave the jury the following instruction: "You are instructed that the evidence adduced in this case will not sustain a verdict for the plaintiff, and you are instructed to find and return a verdict for the defendant." The cause is brought to this court to determine whether the evidence justified the instruction given. The facts proved, and for the most part stated in the identical language in which the evidence is found summarized in the brief of plaintiff in error, were as follows:

The defendant occupied and owned a section house within the corporate limits of the village of Ainsworth. This section house was kept, used, and occupied by the defendant's section foreman for the purposes of lodging and boarding section hands in the employ of defendant. It was located on defendant's right of way and about forty feet from the railroad track. The section house was occupied by defendant's foreman until some time in the latter part of March, 1890, at which time the foreman obtained from the defendant leave of absence for thirty days, and, having left his goods stored in the said house, he went with his wife and children on a visit to Blair, in this state, and while so absent he engaged work at Blair, and on the 18th of April, 1890, returning to Ainsworth without his family, he packed his goods in the section house, put them on board of the cars, and shipped them to Blair, leaving the section house locked and its windows fastened, neither of them at the time being broken. The family of the section foreman, at the time he occupied the house in question, consisted of himself, his wife, and one or two small children. When he left the section house and removed his household goods therefrom there was left in a closet an open tin box containing about twenty-five or thirty torpedoes, one of which caused the injury to plaintiff in error. On the 26th of April, 1890, the section house still being vacant, Ollie Luffborough, aged twelve years, Janie Slayton, aged ten years, and Earnest Luffborough, aged seven

years, residing in close proximity to the section house, looking in at the window thereof, saw a hatchet, lantern, and an old boiler in the house. The youngest of these children inserted his fingers through an opening in the glass, drew the bolt that fastened the lower sash, while the other children raised the window, and they all entered the section house. Immediately thereafter they discovered the torpedoes in the open tin box, as they say, in a support for a chimney used as a cupboard, and not knowing what they were, began to play with them and pitched several of them into the cellar. Janie Slayton took some of the torpedoes home to play with. The other children took the old hatchet and the old lantern which they found in the house. The children carried these torpedoes some three hundred yards distant to where plaintiff in error then resided with his parents. The plaintiff in error had been fishing and returned shortly after the children had carried these torpedoes home. The mother of the children tried to open one of the torpedoes with a case knife. As soon as plaintiff in error came home his sister told him what they had found, and remarked to him that they could not open them. Plaintiff in error, a boy of twelve years of age, then placed a torpedo on the surface of the ground and struck it with a hammer, when it suddenly exploded, striking him on the cheek and eye, causing permanent injury. The torpedoes in question were used by defendant's servants to warn its employes of any danger on their line of road-bed. It appears from the testimony of the section foreman that these torpedoes had been kept in the tool house near the section house until about six months before the section house was vacated, when the section foreman removed them into the section house.

The effect of an instruction, given as this was, is discussed in section 2267 of Thompson on Trials: "The demurrer to evidence used in the ancient common law practice seems to have passed, for the most part, out of use in American

jurisdictions. In the place of it the defendant moves for a nonsuit, or requests the court to give a peremptory instruction to the jury to return a verdict for the defendant. In either case the effect is substantially the same as a demurrer to the evidence under the ancient practice. An order of nonsuit, or a peremptory instruction given in compliance with such a motion, does not undertake to decide any question of fact, but simply pronounces the law arising upon the evidence, admitting the same to be true. In this way the court pronounces upon the legal effect of the facts which the evidence may in the opinion of the jury prove. If there is no evidence tending to support the allegations of the plaintiff's declaration, petition, or complaint, it is, under all theories of procedure, the duty of the court to instruct the jury that he cannot recover."

The proofs in this case in no way tended to establish negligence on the part of the railroad company. The section house was on its right of way and subject to its control. It was occupied by one of its employes and his family as their home. It was not used for the operation of the railroad of defendant. The torpedoes were by the section foreman brought to his home and there deposited. Whatever of danger might reasonably be anticipated from this act must result to his own children or wife, and it could not be anticipated as likely to happen to others burglariously entering his home. When the section foreman left this house he locked the doors and left the windows securely fastened. It is insisted, however, that there was a hole in the window which admitted of the insertion of the hand of Earnest, whereby he was enabled to undo the inside fastenings of the lower sash, and that the existence of this opening was evidence of negligence. While the window was unfastened by a boy of seven years of age, the sash was raised and entry first made by girls of the age of ten and twelve respectively. There were taken by one of these girls a hammer and lantern and several tor-

pedoes. The removal of these articles was undoubtedly because of their supposed value or use and was the act of children who should have known better than to do as they did. The childish instinct of Earnest, the youngest of the number, cannot be extended so as to qualify the acts of his associates. If the hole in the window had been too small to admit of the insertion of the hand of Earnest, it would have been very easy for his associates to have made it larger; or if there was no hole, it was within the power of these children to make one, and in either of such cases the quality of the act differed in no respects from the means actually employed to secure possession of the personal property which was within the house. The entrances to the house, having reference to its purpose and construction, were securely closed. There could be no reasonable requirement that such a house should be provided with iron shutters so securely fastened as to preclude the possibility of entry by idle children. If this requirement is reasonable in this case, it would be in case of other residences, for, as we understand the law, the existence of negligence in such cases does not depend upon the fact that the house happens to be owned by a railroad corporation. The purpose of fastening doors and windows is to prevent ingress by strangers, it is true, yet we have never before heard it urged that a proprietor should be held liable in damages to an intruder merely because his house was not rendered absolutely impossible of entrance. The instruction was properly given requiring a verdict for the defendant. It could have subserved no useful purpose to either litigant to trust that the jury, upon the submission of the entire case to them, would exercise the same discretion as could reasonably be expected of the trial court. There was no evidence on which the verdict could be sustained, and the trial judge did but his duty in so informing the jury. Often the responsibility of determining questions which should be met by the trial judge is devolved in the last instance upon this court. This is

sometimes scarcely fair to litigants, for it frequently happens that the question to be determined is surrounded with difficulties in this court from which the trial court has comparative freedom.    When the trial judge approves the jury's estimate of the weight of the evidence adduced, there arises a presumption in favor of its correctness, because both the judge and the jury have had opportunities of observing the deportment of the witnesses and their apparent candor, which are denied this court.    When the trial judge is satisfied there is no evidence to sustain a verdict, it is his duty so to instruct the jury, for in such a case the merits are presented in this court untrammeled by adverse presumptions.    The judgment of the district court is

AFFIRMED.