GALVESTON, H. & S. A. RY. CO. v. GRACE.

(Court of Civil Appeals of Texas. Galveston. Feb. 9, 1914.)

1. RAILROADS (§ 414*)—INJURIES TO STOCK—DEFECTIVE RIGHT OF WAY FENCE—LIABILITY OF COMPANY.

Plaintiff's mule escaped from his lot through a break in defendant's right of way fence, and strayed onto defendant's bridge, where it was caught in the spaces between the ties, and was so injured thereby and by exposure that it died. *Held* that, no injury by train being involved, the company could not be held liable on the ground of negligence in failing to fence against live stock.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1474, 1475; Dec. Dig. § 414.*].

2. RAILROADS (§ 422*)—FENCES—INJURY TO ANIMALS.

An adjoining landowner could not assume that a railway right of way fence was in such condition as to prevent his mule from entering on the track, or that the company had repaired it, where he actually knew at the time that stock could go through the fence onto the right of way.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1512–1515; Dec. Dig. § 422.*]

Appeal from Matagorda County Court; W. S. Holman, Judge.

Action by B. F. Grace against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, Proctor Vandenberge & Crain, of Victoria, and Holland & Murphy, of Bay City, for appellant. Linn, Conger & Austin, of Bay City, for appellee.

McMEANS, J. B. F. Grace sued the Galveston, Harrisburg & San Antonio Railway Company in the justice court of Matagorda county to recover $200, the alleged value of a mule alleged to have been killed as a result of the negligence of the railway company, and recovered a judgment for $187.50. The railway company appealed to the county court, where, upon a trial before a jury, the plaintiff recovered a judgment for $200, and, from this judgment, the defendant has appealed.

The evidence in the record justifies the following fact findings: Defendant maintained and operated a railroad through the station of Gainesmore. At this station there was a side track and a depot building; but no agent was kept there, and shipments from that point were only in car lots, and no shipments were delivered there, except when the consignee was present to receive them, or when the shipment was to be delivered at the consignee's risk. Originally the right of way had been fenced; but of late years the fence at and near the station had been allowed by defendant to become out of repair, and on the side of the track on which plaintiff lived it was down in several places, and a gate which had been placed at a road crossing near plaintiff's home had been allowed to become out of repair, and to remain constantly open, and no effort was made by defendant to keep it closed. There was nothing in the situation at the place where this gate was, or at the place where the fence was down, to prevent defendant from fencing its right of way, and keeping it fenced, if it desired to escape absolute liability for stock killed or injured on the track by its locomotives and cars. At a point not far from the gate, and from the place where the fence was down, defendant had constructed, as a part of its track, a trestle bridge over a creek. This bridge is the usual and customary kind used by railroads, and was properly constructed and well adapted to the uses to which it was applied. At the ends of this bridge the floor of same was made of cross-ties placed very closely together in the nature of a solid floor, and as the trestle continued the apertures between the ties were widened until they were so far apart that a horse or other animal could not cross the same without danger of falling through. To a person approaching on the track, the bridge had the appearance of having a solid floor its entire length, and, from the point where it was first entered upon, it could not be seen that there were any openings which would be dangerous. Plaintiff's mule escaped from his lot in the nighttime and strayed upon the railway track, and upon the bridge, and, after it had gotten about 20 feet from the end of the bridge, its feet passed through an aperture between the ties, and became so fastened that it could not extricate itself, and as the result of injuries received in this way, and from exposure, it died. The mule was not struck or injured by the locomotives or cars of defendant; but its death was due solely to the injury received by its feet becoming fastened in the bridge, and to exposure.

Under this state of facts the contention is made that, as the uncontradicted evidence shows that the mule was not injured by coming in contact with a locomotive or car, but its injury and death were caused solely by its voluntarily walking upon the trestle bridge and becoming fastened therein, appellant is not liable for its value. It is further contended that there was no duty resting upon appellant to so construct its bridges as to prevent live stock from being injured, if they should happen to walk thereon.

[1] We think these contentions must be sustained. This suit was not brought under article 6603, Revised Statutes 1911, which makes railroad companies absolutely liable for stock injured or killed by locomotives and cars on unfenced tracks, but appears to be based solely upon the negligence of the appellant in failing to fence its track against the incursions of live stock thereon.

We cannot distinguish this case in principle from Padgitt v. Railway Company, 90 S. W. 67. It appears that in that case the railroad right of way was fenced on both sides, but that Padgitt's mare walked over a cattle guard and went upon the track about 100 yards where appellee had a bridge and was injured. The cattle guard was so constructed as to form no obstacle to animals crossing over it. Padgitt lost in the trial court and appealed, and, in affirming the judgment, the court said: "The animal was not injured through the locomotives or cars of appellee. The case of appellant is no better than if appellee had never inclosed its right of way across the farm. At best the evidence shows that appellee had its track in such condition that animals had free access to it. Appellee was not required to keep its track or bridges in such condition as not to injure animals that went upon the right of way. Railway v. Hughes, 68 Tex. 291, 4 S. W. 492; Railway v. Tamborello, 67 S. W. 926."

Railway v. Tamborello, cited in the opinion above referred to, is very similar in its facts to the case before us. There, as here, the animal walked upon a trestle at a point where the road was unfenced. In deciding that the railway company was not liable for

the injury to the animal caused by its falling from the trestle, the court said: "The first requisite to establish negligence is to show the existence of a duty to the party aggrieved, and then a violation or neglect to perform that duty. Cooley on Torts, 859, 860. No duty requires a railroad company to abstain from using its property for any lawful purpose, or to use any care to keep the premises in good condition, on account of the possibility that cattle may stray upon the unfenced track and suffer injury. Shear. & R. Neg. § 419; Railway v. Kirksey (see this case for citation of authorities and discussion of the subject) 48 Ark. 366, 3 S. W. 190; Railroad Co. v. Carraher, 47 Ill. 333." See, also, Railway Co. v. Harrison, 146 S. W. 596.

Appellee, Grace, in support of the judgment, cites and relies upon the case of Railroad v. Dixon, 49 Tex. Civ. App. 506, 109 S. W. 978. The facts in that case were in substance that Dixon's horses escaped from his field and entered upon the railroad right of way through a gate, which formed a part of the right of way fence, and which the railway company had negligently allowed to become defective and out of repair, and failed to keep it closed. After the animals had gone upon the track, they became frightened at the approach of a train and ran down the track in front of the train and fell into a bridge. They were not struck by the locomotive or any of the cars constituting the train. It was held that the railway company was liable. The following, taken from the opinion in that case, readily suggests its distinction from this: "It may be conceded that the railway company was not required to inclose its track with a fence, and, when it is not done, it would only be held liable in the event the locomotive or some part of the train came in contact with the animal; but, when a fence is erected, and the track inclosed, it must exercise ordinary care to keep the fence in a proper condition, and this new duty arises, not only to the public, but to adjacent owners, so that harmful results may not follow from the failure to perform this duty. When the track and right of way is protected by a fence erected by the railway company, and under its control, and it is supposed to be sufficient to prevent stock from entering upon the track, the owner of the adjacent inclosure, which is so separated from the right of way by the fence, should be permitted to act upon the assumption that he can, with safety to his stock, turn them into the inclosure, resting upon the belief that the railway as to him has performed its duty to keep the fence in proper condition. Of course, if there is no duty, there can be no liability; but in a case of this character the erection of the fence, and assuming the duty to keep it in repair, when there is no indication of a purpose to abandon this duty, is an implied understanding with the owner that his adjoining inclosure may be used without danger to his stock trespassing upon the right of way and track."

[2] In the case before us the plaintiff, Grace, testified that he moved to Gainesmore in the fall of 1911, and that during the time he has lived there the railway company had made no effort or attempt to repair its right of way fence; that the fence had been down on his side of the right of way, and the gate had remained open, ever since he lived there; that he knew his stock or any other stock could get on the railroad track and on the bridge over the creek either through the gate or through the right of way fence, and that he knew such condition existed the night his mule got out on the bridge; that he presumed the mule walked onto the bridge of its own accord, and fell through the ties. Knowing all this, he certainly was not authorized to act upon the assumption that the fence was in such condition as to prevent his mule from entering upon the track, and to rest upon the belief that the railway company as to him had performed its duty, indeed, if it owed him any, to keep the fence in proper condition.

We think that under the facts of this case no liability upon the part of appellant is shown or can be shown, and, for this reason, the judgment of the court below is reversed, and judgment is here rendered for the appellant.

Reversed and rendered.