FT. WORTH & R. G. RY. CO. v. BROWN.
(No. 8039.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 19, 1914. Rehearing Denied Jan. 23, 1915.)

1. NEGLIGENCE ☞119 — PETITION — ISSUES, PROOF, AND VARIANCE.

One suing for negligence cannot recover on a ground not alleged in his petition.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 200-216; Dec. Dig. ☞119.]

2. PRINCIPAL AND AGENT ☞177—NOTICE TO AGENT—DANGEROUS PREMISES—POISON.

One cannot recover for loss of his cattle by poison, placed by a railroad company on its right of way to kill Johnson grass, on the ground of the company's failure to notify him of the distribution of the poison, where the agents in charge of the cattle knew the facts.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 670-679; Dec. Dig. ☞177.]

3. RAILROADS ☞411—KILLING STOCK—DANGEROUS PREMISES—POISON.

Rev. St. 1911, art. 6603, making a railroad company failing to fence its tracks liable for stock killed, applies only to stock killed by trains or locomotives, and to authorize one to recover for the loss of his cattle by poison placed on the right of way he must show negligence.

[Ed. Note.—For other cases. see Railroads, Cent. Dig. §§ 1409-1450; Dec. Dig. ☞411.]

4. ANIMALS ☞96—INJURY TO TRESPASSING CATTLE—LIABILITY—POISON.

One placing poison on his premises for a legitimate purpose is not liable for the death of another's cattle trespassing thereon and eating the poison, unless he failed to exercise reasonable care.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 375-379; Dec. Dig. ☞96.]

5. RAILROADS ☞411 — FAILURE TO FENCE — STOCK LAW—EFFECT.

A railroad company placing poison on its right of way to kill Johnson grass, where the stock law (Rev. St. 1911, arts. 7227, 7248) is in force, need not foresee that stock may be running at large, and is not guilty of actionable negligence for failing to station guards at gates in the pasture of an adjacent owner or along its right of way to prevent trespassing cattle from entering on the track.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1409-1450; Dec. Dig. ☞411.]

6. ANIMALS ☞96 — TRESPASS — DANGEROUS PREMISES—LIABILITY.

Where the willful or negligent act of a third person in opening a gate in a fence adjacent to a railroad right of way on which poison had been placed caused cattle to escape on the right of way and eat the poison, failure of the railroad company to notify the owner that it was going to put out poison was not actionable negligence.

[Ed. Note.—For other cases, see Animals, Cent. Dig. §§ 375-379; Dec. Dig. ☞96.]

Buck, J., dissenting.

Appeal from District Court, Tarrant County; R. H. Buck, Judge.

Action by W. E. Brown against the Fort Worth & Rio Grande Railway Company.

From a judgment for plaintiff, defendant appeals. Reversed and rendered.

Lockett & Rowe, of Ft. Worth, and Andrews, Streetman, Burns & Logue, of Houston, for appellant. Stephens & Miller, of Ft. Worth, for appellee.

CONNER, C. J. Appellee Brown instituted this suit to recover of appellant damages for the loss of a number of Jersey cattle, which he alleged had been poisoned and killed by the negligence of appellant, its agents and servants. It was alleged, in substance, that on or about the 28th day of August, 1911, the agents and servants of the defendant negligently applied "some kind of poison, the exact kind being unknown to plaintiff," to Johnson grass growing upon its unfenced right of way, and that certain of his cattle went upon the right of way and ate of the poisoned Johnson grass, resulting in the death of 20 head of said cattle. Appellant's negligence is thus alleged:

"Defendant was guilty of gross negligence in putting out poison on its right of way running through some of plaintiff's land, and on and near a public road, without having the same fenced, said right of way, to wit, and without taking any precaution to protect plaintiff's cattle from entering on said right of way and becoming poisoned, although defendant knew that plaintiff's cattle were in a pasture through which a gate opened onto said right of way, and knew that said gate was liable to be left open, and knew that the natural propensity of said cattle was to eat the grass on said right of way on which defendant had put out poison, and knew and was bound to know that it was endangering the life of said cattle when it put out said poison."

Defendant answered by a general denial, and also by the following special answer:

"Defendant avers that, at the time of the injuries complained of by plaintiff, there was a stock law in full force and effect in Tarrant county which prohibited the cattle from running at large in said county; that the plaintiff and his agents in charge of said cattle illegally permitted the plaintiff's cattle to run at large in Tarrant county and get on the right of way of this defendant in violation of said stock law, which act was negligence on the part of plaintiff and his agents, and was the proximate cause of the death of plaintiff's cattle, and proximately contributed to the cause of their death, which act of negligence is hereby expressly pleaded in bar of any recovery herein."

The trial before the court without a jury resulted in a judgment in appellee's favor, for the sum of $1,362. The judgment rests upon the following conclusions of fact and law filed by the trial court, viz.:

### Conclusions of Fact.

"(1) The court finds that a day or two prior to September 1, 1911, 20 head of Jersey cattle belonging to plaintiff were poisoned on the right of way of defendant and died in consequence thereof, which were then of the reasonable market value of $1,200.

"(2) The court finds that just prior thereto the defendant had put out a poisonous solution on its right of way adjacent to plaintiff's pastures where said cattle were kept in order to kill Johnson grass on said right of way, and that there cattle went from the pasture of the plaintiff on the west side of said right of way through a gate in plaintiff's fence which had just been left open by some one unknown to plaintiff and without the fault of plaintiff, and after grazing a few minutes on said right of way became poisoned; that the plaintiff's agent in charge of said cattle, as soon as he discovered that they were on said right of way, which was only a few minutes after they had passed through said gate on to the right of way, immediately drove them off of said right of way and confined them in a lot.

"(3) The court finds that the plaintiff also had a pasture on the east side of said right of way, and that a public road of Tarrant county ran along on the east side of and adjacent to said right of way between the same and plaintiff's fence inclosing said east pasture, and that there was a gate in said fence east of the right of way, and also two gates in the fence west of the right of way, and that these pastures were inclosed with lawful fences, and the gates were in good condition, and that the agent of plaintiff in charge of said cattle took every reasonable precaution to keep said gates closed and to keep said cattle within said pastures; that they were driven each day across said right of way, being grazed in the east pasture during the day and in the west pasture during the night; and that the plaintiff or his agent did not permit said cattle to graze upon said right of way and was not guilty of any negligence in the premises.

"(4) The court finds that said pastures and right of way were in Tarrant county about six or seven miles west or southwest of Ft. Worth, and that the defendant in putting out said poison to kill said Johnson grass was aware of the fact that plaintiff had his cattle in said pastures and was driving them to and fro across the right of way from one pasture to another twice every day, and that these cattle, as well as cattle driven along the public road, were liable to eat said Johnson grass and to be killed thereby, and also knew of said gates in said fences and of the liability of some person passing through them to leave the same open and of the propensity of cattle to graze upon the Johnson grass and failed to notify the plaintiff or his agent of the danger to which it was subjecting said cattle in putting out said poison, though it did notify a neighboring dairyman whose pasture adjoined the defendant's right of way. The court further finds that plaintiff did not know, nor had he been notified, that said solution so distributed along its right of way was poisonous to cattle.

"(5) The court finds that said right of way was not fenced, and that the defendant took no precaution whatever to prevent plaintiff's cattle from entering upon said right of way and eating said Johnson grass.

"(6) The court finds that the defendant, in putting out poison on its right of way under the circumstances shown in the evidence, was guilty of gross negligence, and that this negligence was the proximate cause of the death of said cattle.

"(7) The court finds that the stock law prohibiting cattle from running at large in Tarrant county had been adopted prior to the time when said cattle were killed and was in force at that time.

### "Conclusion of Law.

"The court finds that the mere fact that the stock law had been adopted in Tarrant county and was in force when said cattle were killed did not relieve defendant of liability for putting out poison along its right of way between plaintiff's pastures and within a few feet of a public road, but that under the facts above stated, and under the circumstances more fully shown by the evidence, it was liable for the consequences of putting out said poison which resulted in the killing of plaintiff's cattle, and.

that this gross negligence on the part of the defendant was the proximate cause of said injury, and that the plaintiff was not guilty of contributory negligence preventing a recovery herein."

[1, 2] It will perhaps be well to observe that, while the court in his findings states that appellant "failed to notify the plaintiff or his agent of the danger to which it was subjecting said cattle in putting out said poison," no such ground of negligence was alleged in plaintiff's petition. It also appears from the undisputed testimony of the plaintiff that his cattle were in charge of one Crimm, and he testifies without dispute that:

"I knew the grass was poisoned, but did not know it would poison cattle. * * * I seen them passing there and putting out the poison. The noise the car made drawed my attention to it. I had come to town with butter Monday morning and seen the car that had the poison in it standing in the Frisco Yards. It was a kind of a tank car with a cap. It had a label on it, which said: 'Dinamin. Put up by the Galveston Chemical Company for killing Johnson and Bermuda grass.' I believe that was what the label said, but I would not be positive. The car that I saw in the Frisco Yards was the car that was afterwards pushed down on this track, and the noise it made distributing the fluid drawed my attention to it. * * * I seen them while they were putting the poison out along the right of way. They put the poison along there in the morning, and that evening the cattle got on the right of way, and the next morning I noticed there was something wrong with the cattle. * * * The poison ran out some eight or ten feet from the end of the ties on each side of the track, and it turned the grass brown like it had been frosted."

It follows that the plaintiff's recovery cannot be predicated upon negligence on the part of the servants of the railway company in failing to notify the plaintiff of the fact that the poison had been distributed along the right of way, both because there is no basis in the pleadings for such ground of recovery, and because, so far as the evidence shows, the plaintiff's agent in charge of the cattle knew as much about it as did appellant's servants who distributed the substance.

[3] Nor can plaintiff's recovery be grounded upon the fact that appellant's right of way was not fenced, inasmuch as his cattle were not killed by appellant's locomotive or cars, in which event only our statute makes railways absolutely liable for the value of stock killed, irrespective of the question of negligence. R. S. art. 6603; G., H. & S. A. Ry. Co. v. Graves, 164 S. W. 413, and authorities there cited; I. & G. N. Ry. Co. v. Holley, 160 S. W. 990. So that, in determining the question of plaintiff's right to recover, we are restricted to the particular grounds of negligence alleged, to wit, that of "putting out poison * * * without taking any precaution to protect plaintiff's cattle from entering on said right of way and becoming poisoned."

[4] In the case of Brown v. M., K. & T. Ry. Co. of Texas, 69 S. W. 178, Brown sued the railway company, alleging that it had permitted Johnson grass to grow up on its right of way, that Johnson grass was attractive to cattle, and that his cattle had been attracted thereto through an insufficient fence and poisoned; but it was held, following a decision of our Supreme Court, that damage or inconvenience by one from a state of things naturally existing upon the land of another furnishes no ground of complaint against the latter. In relation, however, to the question of the liability of one who by artificial means collects upon his own premises substances not naturally arising thereon, which in themselves are dangerous, and which may inflict injury to others if not kept under proper control, Mr. Thompson, in his Commentaries on the Law of Negligence (volume 1, § 696), says that the American doctrine, contrary to that applied by the English Courts, is:

"That one who artificially collects upon his own premises a substance which from its nature is liable to escape and cause mischief to others must use reasonable care to restrain it and is answerable for any damages occasioned to others through its escape from a want of care."

Thus showing that in such cases, as an essential predicate of recovery, a plaintiff must show a want of reasonable care on the part of the owner of the land where such substances are collected to prevent injury to others. This principle is recognized in the plaintiff's petition herein and was, in effect, applied by our Supreme Court in the case of G., C. & S. F. Ry. Co. v. Oaks, 94 Tex. 155, 58 S. W. 999, 52 L. R. A. 293, 86 Am. St. Rep. 835, where it was held that the planting of Bermuda grass by a railway company on its right of way, not being in itself unlawful, would not, unless shown to have been done under circumstances making it an unjustifiable use of its property by the company, render it liable for injuries to the lands of an adjoining proprietor by the spreading of such grass thereon from the right of way.

[5] Can it be said then, in the light of these authorities, that any such negligence on the part of the appellant railway company was shown, as alleged, as will support the recovery in this case? Our statutes under severe penalties forbid railway companies to permit Johnson grass on their right of ways to go to seed (see R. S. 1911, art. 6601), and we know of no statute and none has been cited, which makes it unlawful to kill such grass by substances which in their nature may be poisonous. We know as a matter of common knowledge that poisonous substances are frequently used by owners of land to eradicate harmful growths, insects, and animals, and we know of no case holding that the mere fact that such poisonous substances used by such owners on their own premises is an insurer against harm that may arise to persons or animals that may intrude upon such premises without the consent of the owner. If then, as we think it must be held, the mere fact that appellant

used the poisonous substance in question upon its right of way will not support the recovery in this case, what further act of negligence may be relied upon? It was alleged, in substance, that no precaution had been taken to protect plaintiff's cattle from entering the right of way; but it is undisputed that the fences upon either side belonged to the plaintiff, the gate through which the cattle entered was his, the duty and burden of keeping the gates closed not only rested upon the plaintiff, but was actually assumed by his agent as such agent expressly testified. S. A. & A. P. Ry. Co. v. Robinson, 17 Tex. Civ. App. 400, 43 S. W. 76; M., K. & T. Ry. Co. of Texas v. Hanacik, 23 Tex. Civ. App. 394, 56 S. W. 938; St. L. & S. W. Ry. Co. of Texas v. Adams, 24 Tex. Civ. App. 231, 58 S. W. 1035. The court finds, and there is no controversy on this point, that the stock law was in force in the locality under consideration. Under the terms of this law, it was not only unnecessary that the railway company should fence against stock (see R. S. 1911, art. 7227), but it was also unlawful for the plaintiff to permit his cattle to run at large (see R. S. art. 7248). The appellant company therefore was not bound to foresee that stock might be running at large on its right of way. See M. K. & T. Ry. v. Scofield, 98 S. W. 435; H. & T. C. Ry. Co. v. Hollingsworth, 29 Tex. Civ. App. 306, 68 S. W. 724; H. & T. C. Ry. Co. v. Atlas Press Brick Works, 36 Tex. Civ. App. 368, 81 S. W. 792. On the contrary, appellant had the right to assume that the plaintiff would keep his gate shut, as it was his duty to do, and thus prevent the stock in his inclosed pasture from entering upon the right of way. What further act of care on appellant's part could reasonably be required? Must it be held that, having put out the poison in question, it was the duty of the railway company under the circumstances to post a guard at each of the gates in appellee's pasture, or to station guards along its right of way to prevent trespassing cattle from entering thereon? We think not.

In Slayton v. Fremont, etc., Ry. Co., 40 Neb. 840, 59 N. W. 510, a railroad company left torpedoes in a section house situated on its right of way. The doors and windows of the house were closed and locked; but there was a hole in one of the windows, through which a child put its hand and unlatched the bolt. After raising the window and entering the house, the child got one of the torpedoes and was injured by it. The court held that the company was not liable. The torpedoes were dangerous instruments, and the company was bound to use care in protecting them; but it was not bound to render it impossible for trespassers to get to them, as it might have done by putting iron bars on the windows.

In Badali v. Smith, 37 S. W. 642, defendant owned a vicious dog, which he kept confined on a lot inclosed by a high fence. Plaintiff's son saw the dog and put his hand through the fence. The dog bit the child, but the court held, in effect that under such a state of facts the defendant would not be liable, for he was not bound to make it impossible for strangers to be injured by the dog, in spite of their trespasses.

In McCutchen v. Gorsline, 39 Tex. Civ. App. 146, 86 S. W. 1044, defendant owned an uninclosed lot in a town, where the stock law was enforced. The lot had an open well on it, and plaintiff's horse, running at large, fell into it. The court held that defendant was not liable unless he was guilty of gross negligence, and the fact that the well was on an open lot in a thickly populated district did not show gross negligence as against owners of stock.

The only thing that appellant might have done towards better safeguarding the poison, which it did not do, was the placing of guards at the gates or along the right of way where the poison was located. This doubtless would have made it impossible for the cows to get to the grass. But it is difficult to see that the failure to do this constituted gross negligence, as alleged, and, under the cases cited, appellant cannot be held liable unless it was guilty of gross negligence.

[6] It is urged that the company should have notified appellee that it was going to put out the poison. But in addition to what has already been said on this subject, there is nothing to show that this would have prevented the accident. The trial court found that appellee was not negligent in the manner in which he kept his fence, and there is no evidence to show that he would have locked the gate, or kept a closer watch out had he been specially notified. Furthermore, the negligent or willful act of the third party in opening the gate might have been committed while appellee's agent was away from home or asleep and in no position to discover it in time. In such case, notification would have been without effect. A train is dangerous to cattle on the right of way as well as poison, yet plaintiff evidently thought that the fence was sufficient to protect his stock from trains, and, as stated nothing appears that indicates that the failure to give notice is material.

Under the authorities and circumstances already stated, the burden of preventing the escape of appellee's cattle and entrance upon the right of way rested at least with as great force upon the plaintiff as the defendant, and we see no sufficient reason to hold that the result which followed the unauthorized act of some person in leaving plaintiff's gate open should be borne by the appellant rather than the plaintiff himself. Under very similar circumstances, this court held, in the case of St. L. & S. W. Ry. Co. v. Bailey, 168 S. W. 406, that the railway company was not liable for the death of Bailey's

cattle which had escaped through a pasture gate fence and drank oil upon the right of way, which it was alleged had been negligently collected there. So, in Mayberry v. Mill Co., 112 Tenn. 564, 85 S. W. 401, the Supreme Court of Tennessee held that the owner of a shed in which nitrate of soda sacks were stored was not bound to keep its premises safe from trespassing animals, nor liable for the death of a cow caused by her straying into the sheds and eating the sacks. Stress has been laid upon the fact that in this case there was a public road along the south side of the right of way, and that the plaintiff's cattle were driven one or more times a day across the right of way from one pasture to the other. Had the injury complained of in this case happened to cattle lawfully driven along the right of way or across the right of way from one pasture to the other which had accidentally escaped from caretakers, a different holding might possibly be required. In such case, it might be properly said that appellant could, in placing the poison, reasonably have anticipated such a result; but appellant's duty to stock lawfully passing along the highway is not here involved. I. & G. N. Ry. v. Vallejo, 102 Tex. 70, 113 S. W. 4, 115 S. W. 25. It must be measured by the circumstances of the particular case, and the accident here complained of arose in no such way. It was such as in a legal sense could not reasonably have been anticipated See Railway v. Bailey, supra.

We conclude that, except as herein otherwise stated, the court's findings of fact should be adopted, and the judgment reversed and here rendered for appellant.

BUCK, J., dissenting.