Filed May 16, 1891.

---

No. 110.

## WHITEHEAD *v.* COYLE.

REPLEVIN.—*Possessory Action.— When Lies.*—The action of replevin is a possessory action, and will lie only in cases where the plaintiff is entitled to the immediate possession of the property in controversy.

SAME.—*Effect of Judgment on Title to Property.*—Where the plaintiff is entitled to the possession of the property in controversy by reason of his title thereto, a judgment in his favor in an action of replevin determines not only the right to the possession, but the title to the property, and the judgment is conclusive upon the parties both as to the possession and title.

SAME.—*Practice on Appeal.*—In a case of replevin, on appeal, where it does not clearly appear whether the judgment in favor of the plaintiff affirms the plaintiff's title and his right to the possession of the property, or whether it merely affirms his right to the possession thereof, the case will be reversed if the evidence shows that the plaintiff was only entitled to the possession.

CHATTEL MORTGAGE.—*Right of Possession Under.*—The mortgagee of a chattel, if the mortgage does not specify who shall keep possession of it until the debt becomes due, is entitled to the immediate possession of such chattel.

SAME.—*Sale.—Notice in Writing to Mortgagor.—Sale of Property by Mortgagor.* —If a chattel mortgage provide for a sale of the property by the mortgagee upon ten days' written notice first given to " the grantor, his agents or assigns," and after the execution of the mortgage the mortgagor sell the property, a sale, without a written notice first given ten days before the day of sale to the purchaser, is void. A ten days' verbal

notice to the purchaser and a written notice for the same period to the mortgagor will not render the sale valid.

From the Miami Circuit Court.

*J. L. Farrar, J. Farrar* and *W. C. Farrar,* for appellant.

*N. N. Antrim* and *S. D. Carpenter,* for appellee.

REINHARD, J.—One John McCracken executed to the appellee a chattel mortgage on certain saloon property, of which he was the owner, to secure the payment of a debt of $150. The mortgage was duly recorded. Sometime after the execution of the mortgage, but before the debt became due, the appellant purchased the mortgaged property of McCracken, paying him a valuable consideration therefor. The mortgage provides that the mortgagor may retain possession until the debt becomes due, but that after the maturity of the debt the mortgagee may, at any time, seize the property and sell it. The mortgage further provides that before any sale is made of the property to satisfy the mortgage the mortgagee shall give ten days' notice thereof in writing to " the grantor, his agents or assigns."

The possession of the property was turned over to the appellant at the time of the sale to him, and he retained the same up to and after the time of the commencement of this action.

When the debt became due the appellee notified McCracken in writing (but not the appellant) that he was about to sell the property. Written notices were also posted of the time and place of the sale in three public places in the city of Peru, where the property was situated.

On the day the sale was to take place the appellee, by some means not necessary to mention here, obtained possession of the key to the appellant's room in which the goods were stored, and there went through the ceremony of a public sale, the appellee's attorney acting as auctioneer, and her agent and husband, John Coyle, bidding in the property for the price of $200. The key was returned to the appellant's

wife, from whom it had been obtained in his absence from the city, and the goods were again left in the appellant's possession.    Afterwards, the appellee, being unable to secure the possession of the property from the appellant, brought this action in replevin.    Appellant executed a delivery bond and retained possession.

In the circuit court the appellant filed his answer, and upon issues formed the cause was submitted to the court for trial, and there was a finding and judgment that the appellee was the owner and entitled to the immediate possession of the property in controversy; that the same was unlawfully detained from the appellee by the appellant, and that it was of the value of $350, for which amount judgment was rendered for the appellee and against the appellant, to be operative in case the latter failed to turn over the possession of the property.    From the judgment of the court this appeal is prosecuted.

The overruling of the motion for a new trial is the only error assigned.

The reasons assigned in the motion for a new trial were two, viz. :

" 1.  Error in the amount of the recovery, and that it is too large.

" 2.  That the verdict and decision is not sustained by sufficient evidence."

One of the questions, then, and, as we regard it, the controlling one which is presented for our decision, is whether the evidence is sufficient to sustain the finding and judgment of the court.

The action of replevin is a possessory action, and will lie only in cases where the plaintiff is entitled to the immediate possession of the property in controversy.    While it may be said that the question of ownership is, in some sense, also involved in the trial of such cases, it does not follow that in every case of replevin the title to the property is in issue; on the contrary, a man may be entitled to the possession of

a chattel, as bailee, pawnee, or in many other ways, without having the ultimate legal title to the property, while in one sense it is true, also, that he has some sort of special ownership in it.

Thus, the mortgagee of a chattel, if the mortgage is silent as to who shall keep the possession until the debt which it was given to secure becomes due, is entitled to the immediate possession, though the mortgagor is still the ultimate owner, and retains the right to the equity of redemption until the same has, by sale of the property, or other proceedings, been legally foreclosed. Hence, if a mortgagee, without having first foreclosed this equity of redemption in the mortgagor, bring an action of replevin for the mortgaged goods he may recover the possession ; but if the mortgagor afterwards redeem the goods, the right of possession will revert to the mortgagor after such redemption. But if the mortgagee, prior to the commencement of the proceedings in replevin, in some legal way, foreclose the equity of redemption, and at a sale under such proceedings become the absolute owner of the chattels, and then bring replevin for them, the action may determine not only the right to the possession, but the title to the property also ; and where, in such case, both the title and right of possession are claimed and adjudged to be in the plaintiff, the judgment is conclusive upon the parties to the record both as to possession and title, as long as the judgment remains in force. *Smith* v. *Mosby*, 98 Ind. 445 ; *Landers* v. *George*, 49 Ind. 309.

This double character, as it were, of the action, renders it somewhat difficult at times for an appellate court to make a satisfactory determination of the question whether a given state of facts, when the law has been applied to it, is sufficient to warrant a general finding for the plaintiff without specifying whether the right of recovery is based upon that of possession only, or upon both the right of possession and ownership. Thus if a mortgagee should, in an action for the recovery of the goods mortgaged, claim both the title

and the right to the possession, and the case is litigated upon that theory, and a general finding is made and judgment rendered in favor of plaintiff, and, upon appeal, the Appellate Court should become satisfied that although the plaintiff below had established his claim to the possession, yet he had failed in proving absolute title to the property, it would be a matter of some difficulty to determine upon the kind of relief that should be granted the appellant.   If, in such a case, this court should affirm the judgment of the lower court, because the plaintiff below had prevailed as to the question of possession, there is no doubt but that the affirmance would result in an absolute bar to any future action by the mortgagor to recover back the property, though he should afterwards pay the debt secured by the mortgage and thus redeem the property.   On the other hand, if the cause is reversed because the plaintiff below recovered more than that to which he was entitled, it would appear somewhat unfair not to affirm that portion of the judgment, at least, which is correct and ought to stand; and yet this court would hardly be considered as having the power to reverse in part and affirm in part, when the form of the judgment is such that the complex character of the finding can not be determined therefrom without the aid of the other portions of the record.

In the absence of any precedent set us by the Supreme Court we would consider, in such case, that the most satisfactory mode of remedying the harm done would be by a reversal of the entire judgment so that the trial court would be enabled, upon a new hearing, to adjust its findings and judgment to the rulings of the Appellate Court.

It is clearly shown by the record, in the case at bar, that the parties in the trial court litigated both the right of possession and the title of the property.   The court, by its judgment, determined not only that the plaintiff below had the right to the immediate possession of the goods, but it also decided, in effect, that the sale made under the mortgage to

her was a valid sale, and foreclosed the equity of redemption, and placed the title forever beyond the power and control of the appellant.

When the appellant purchased the property he succeeded to all the rights of the mortgagor.    Appellant being in possession the presumption of ownership follows, until otherwise shown.    We think the evidence shows, without conflict, that appellee knew of the sale to appellant.    Upon this subject W. C. Farrar testified as follows :

" In April, 1888, McCracken, in our office, surrendered the key to the Eclipse Saloon, and sold to the defendant all the property in the saloon ; and I notified John Coyle, agent of plaintiff, of that fact at least two months before any notice of proceedings in foreclosure as shown in this suit."

The only evidence upon this subject, on the part of appellee, was that of John Coyle, the appellee's husband and agent, who testified as follows :

" The first I ever knew of Whitehead's buying the property was from W. C. Farrar, after I made a demand of the property from the defendant."

Counsel for appellee say this was after the sale.    They refer us to the testimony of John Coyle, but we do not find in it any reference to the time he made the demand, except that he says it was " before suit."    Upon the question of time, then, the testimony of Farrar stands alone, and he says it was at least two months before proceedings were instituted. We do not see, therefore, upon what evidence in the record the court could find that the appellee had no notice of the sale and transfer from the mortgagor to the appellant.    But if the appellee knew of the sale and transfer it was her duty, after the acquirement of such knowledge, to deal with appellant with reference to these goods the same as if he were the mortgagor.    The mortgage provided for a written notice of ten days before sale.    The parties had a right to stipulate for such notice, and it was the duty of the appellee to give

it in the manner and for the length of time specified in the mortgage. Jones Chat. Mortg. 795.

After the mortgagor had transferred the equity of redemption, and whatever interest he had in the mortgaged goods to the appellant, of which the appellee had notice, it was to no purpose that written notice of the sale should be served upon the mortgagor only. To him it was a matter of absolute indifference whether the property was sold or not, and a notice to him was but an idle and meaningless ceremony.

The appellee's counsel argue that it could have made no difference to the appellant, whether he received written notice or not; that he had received verbal notice of it, and that answered the purpose.

There is nothing in the record to show that the appellant ever waived the written notice specified in the mortgage, and he had a right to insist upon a strict compliance. What may have been the reason for providing for such notice in the contract is not for us to inquire into. We must take the contract as it is, and this is true also of the parties and their privies. There was much conflict in the evidence as to whether the appellant ever received even verbal notice of the sale. The written notice would have done away with all controversy upon that subject, and this may have been the very reason why it was provided for in the mortgage. However that may be, the agreement between the parties is the law of the case, and by it they must stand or fall.

Other objections are urged to the validity of the sale, but as they may not occur again it will not be necessary to pass upon them. We think the sale was void for failure to give the written notice specified in the mortgage, and that, therefore, while the appellee had a possessory right to the property his title failed, and upon this branch of the case the finding should have been for the appellant.

It will not be necessary to consider the question whether the finding was excessive, but it may not be unprofitable to state here that the alternative judgment for $350, the ad-

judged value of the property, was $50 in excess of the amount claimed in the complaint.

The judgment is reversed, at appellee's costs, and the cause remanded, with instructions to the court below to sustain the motion for a new trial, and for further proceedings not inconsistent with this opinion.

**Filed May 15, 1891.**