## CROUCH ET AL. v. FAHL ET AL.

[No. 9,038.   Filed October 25, 1916.   Rehearing denied December 14, 1916.]

1. SALES.—Contracts.—Breach of Warranty.—Remedies.—Return of Property.—A written contract of warranty of a stallion, providing that in case of a breach thereof the vendor will take the stallion back and that the buyer will accept another stallion of equal value and return the former to the seller in as sound condition as at the time of delivery, provides an exclusive remedy for a breach of the warranty, which is available to the purchaser, under the contract, only in case he returns or offers to return the stallion. pp. 263, 265.

2. SALES.—Contracts.—Breach of Warranty.—Remedies.—Exclusive Remedy.—Return of Property.—Where a warranty confers on the purchaser of personal property the mere right or privilege of returning the property in case it does not comply with the

warranty and making settlement on specified terms, but does not require him to do so to avail himself of a breach, it is the general rule that such stipulation confers merely an optional or cumulative remedy, so that the purchaser may retain the property and maintain an action for damages based on the breach of the warranty; but where the stipulation for the return of the property, if not as warranted, is mandatory, the remedy afforded thereby is exclusive. p. 264.

3. SALES.— Contracts.— Warranty.— Remedy for Breach.— Extension.—Where a contract of warranty provided that the purchaser should return the property before a specified date if found not to be as warranted, a subsequent agreement between the parties that the purchaser should try the property another year extended the warranty for that length of time and required a return of the property at the expiration thereof to make available an action for a breach of the warranty; and, in the absence of proof that the buyer returned or offered to return the property within the time stipulated, the evidence is insufficient to sustain a verdict in favor of the purchaser for damages for breach of the warranty. p. 266.

4. CHATTEL MORTGAGES.—Remedies of Mortgagee.—Replevin.—Sale of Property.—Application of Proceeds.—Where a buyer of personal property gives notes for the purchase price secured by a chattel mortgage authorizing the mortgagee to take possession on default, the mortgagee may, upon failure to pay the notes, maintain an action in replevin to regain possession of the mortgaged chattel and, having thus acquired possession, could cause the property to be sold, purchase the same at the sale, and apply the proceeds to the discharge of the notes. p. 267.

5. BANKRUPTCY.—Sale of Mortgaged Property.—Purchase by Mortgagor.—Lien of Mortgages.—Where a buyer of personal property secured the purchase price by a chattel mortgage authorizing the mortgagee to take possession in case of default, and, upon the mortgagor becoming bankrupt, the mortgaged property was scheduled as a part of his assets, the purchase by the mortgagor of the mortgaged chattel at the sale in bankruptcy did not defeat the mortgagee's right to recover the property, since the sale could only be made subject to the lien of the mortgage. p. 267.

6. BANKRUPTCY.—Action Against Bankrupt.—Parties.—Substitution of Trustee.—Where, in an action in replevin, the defendant, a bankrupt, counterclaimed for a breach of warranty originating prior to his bankruptcy, it was proper for the trial court to substitute defendant's trustee in bankruptcy as a party to prosecute such claim, since it passed to the trustee by reason of the bankruptcy proceedings and he was, therefore, the real party in interest. p. 268.

From Huntington Circuit Court; *Samuel E. Cook,* Judge.

Action by Jeptha Crouch and others against George S. Fahl and others. From a judgment for defendants, the plaintiffs appeal. *Reversed.*

*Wilson & Quinn* and *Branyan & Branyan,* for appellants.
*Fred H. Bowers, Milo N. Feightner, H. B. Spencer* and *J. W. Moffett,* for appellees.

CALDWELL, C. J.—The following undisputed facts are disclosed by the record: On January 14, 1911, appellants sold and delivered to appellee George S. Fahl a certain stallion at an agreed price of $2,500, for which amount Fahl executed his two promissory notes, each in the sum of $1,250, payable with six per cent. interest January 14, 1912, and January 14, 1913, respectively. To secure the payment of the notes Fahl executed a chattel mortgage on the horse. The mortgage was duly recorded. As a part of the transaction of sale, appellants executed to Fahl a certain written guaranty or warranty hereinafter set out, respecting the condition and qualities of the stallion. In payment of a part of the purchase price, Fahl, at the time of the purchase, sold and delivered to appellants a certain other stallion owned by him at an agreed price of $1,100, which amount was credited on the notes above mentioned, $550 on each of them. Appellee Fahl made the following additional payments on the note first maturing: April 9, 1912, $500; August 26, 1912, $50; October 9, 1912, $50. No additional payments were made on the other note.

On April 14, 1914, appellants commenced this action against Fahl to recover possession of the stallion sold to him. The complaint is in the ordinary form of replevin. A writ was issued on affidavit duly made, under which the sheriff took possession of the horse. Fahl having failed to execute an undertaking in time and manner as specified by the statute (§1334 Burns 1914, §1270 R. S. 1881), and

appellants having executed such an undertaking, the stallion was delivered into their possession. Proceeding under certain provisions of the chattel mortgage above mentioned, appellants subsequently caused the stallion to be sold at public auction on notice given, they becoming the purchasers, on a bid of $800, which sum was credited on the notes above mentioned. Appellee Fahl, in due course, answered the action by four paragraphs: first, general denial; second, payment of the notes before suit brought; third, failure of consideration as to the notes and mortgage, in that the stallion was sold and recommended as a breeder, and that on a trial it proved worthless as such; fourth, that appellants' claim to the stallion is based only on the chattel mortgage; that in November, 1913, Fahl filed his petition in bankruptcy, and was subsequently adjudged a bankrupt; that in the proceeding he scheduled the stallion as part of his property, and listed appellants as creditors by reason of said notes; that appellee Charles F. Keefer was duly chosen as trustee in bankruptcy, and as such took possession of the stallion, and by virtue of an order of the bankruptcy court, and pursuant to notice given, sold him at public auction, Fahl becoming the purchaser at $125, which amount he paid by a credit on his exemption of $600 as a resident householder; that appellants, with notice and knowledge of the facts, permitted Fahl to buy the horse, without asserting any right to him, and that they relied on their claim for the balance due on the notes, alleged to have been filed with the referee in bankruptcy.

Fahl filed also two paragraphs of counterclaim: First, that he purchased the stallion on a written guaranty that he was a satisfactory, sure breeder, if properly cared for and kept in healthy condition. The guaranty which is made a part of each paragraph of counterclaim is as follows:

"We have this day sold the imported percheron stallion Hermann No. (73776) 70235, to George S. Fahl of Huntington, Indiana, and we guarantee the said stal-

lion to be a satisfactory, sure breeder, provided the said stallion keeps in as sound and healthy condition as he now is and is properly exercised. If the said stallion should fail to .be a satisfactory, sure breeder with the above treatment, we agree to take the said stallion back, and the said George S. Fahl agrees to accept another percheron stallion of equal value in its place, the said stallion Hermann No. (73776) 70235 to be returned to us at Lafayette, Indiana, in as sound and healthy condition as he now is, by April 1, 1912. If the above named stallion should become disabled before he is delivered, the said George S. Fahl agrees to accept another imported percheron stallion of equal value in his place.''

(Signed) **J. Crouch & Son.**''
''Accepted: George S. Fahl.

Facts are pleaded to the effect that the stallion, although in sound and healthy condition and properly cared for, proved to be practically worthless as a breeder during the season of 1911; that Fahl thereupon informed appellant of the facts, whereupon, at appellants' request, he kept the stallion another season; that during such season, although surrounded by proper conditions, no improvement was shown; that had the stallion been as represented, he would have been worth the purchase price, but that under the circumstances he was valueless as a breeder, and that Fahl had so informed the appellants.

There are general averments that said appellee performed all the terms and conditions of the contract by him to be performed, and that he is willing to return the horse to appellants upon a return by them of the consideration paid and compliance by them with the contract of purchase. There are averments that Fahl has paid the purchase price in full and other averments of special damages based on labor and expense in caring for the horse.

The second paragraph of counterclaim is substantially the same as the first, containing an additional specific averment, however, to the effect that after Fahl had ascertained that the horse had proved to be worthless as a breeder dur-

ing the season of 1912, he informed appellants of the fact, and asked them to take the horse back, and give him another one of equal value, the stallion being at the time in a sound and healthy condition, but that appellants failed and refused to do so. Each paragraph of counterclaim prays judgment for $5,000.

Subsequently, the court on a verified showing made by Fahl that Keefer had been his trustee in bankruptcy since January, 1914, sustained the former's motion that the latter be substituted to prosecute the cause of action presented by the counterclaims, and entered an order substituting Keefer, trustee, in place of Fahl, to prosecute the action set up by way of counterclaim. Appellants reserved an exception to the order of substitution, and subsequently filed an answer of general denial to the counterclaim. The sufficiency of the pleadings was not challenged in the trial court.

The verdict was in favor of Fahl and Keefer on the issues formed on the complaint. On the issues joined on the counterclaim, the jury returned a verdict for $1,000 in favor of Fahl for the use of Keefer as trustee. Judgment was rendered on the verdict.

The sufficiency of the evidence is challenged. In addition to the facts set out in the early part of this opinion, evidence was introduced in support of the various defenses and counterclaims pleaded, in substance as follows: The horse, although properly handled, failed materially as a breeder during the season of 1911. On March 25, 1912, Fahl called on appellants at Lafayette, informed them specifically respecting the failure of the horse, and expressed his dissatisfaction. Appellants reminded Fahl that the horse had been imported recently before his purchase by Fahl, and stated that they frequently had trouble with horses the first season after they were imported, and suggested that Fahl try the horse another year, and give him plenty of exercise. Fahl agreed to do so, and said nothing

about appellants taking the horse back. The horse's record in 1912 was not so good as in 1911. In August or September, 1913, Fahl again called on appellants and expressed his dissatisfaction with the horse, whereupon appellants offered to sell the horse on Fahl's account, and pay him the surplus, if any, over what was unpaid on the notes. There was no evidence that Fahl at any time tendered or offered to return the horse to appellants, or that they offered another in exchange. There was evidence that the horse would have been worth the selling price of $2,500 had it been as warranted, but that he was in fact valueless as a breeder.

The only evidence respecting the proceeding in bankruptcy consisted of certain testimony by Fahl as a witness, in substance, that he filed his petition in bankruptcy in December, 1913, and that he was subsequently adjudged a bankrupt, Keefer being trustee; that Fahl scheduled the horse as a part of his property, and that on March 25, 1914, he bought the horse at bankruptcy sale for $125, and made payment by credit on his exemption as a resident householder. To determine the sufficiency of the evidence necessitates a construction of the written guaranty hereinbefore set out. In ascertaining the rights of the parties

1. under such instrument as applied to the facts of this case, it must be assumed that the horse remained at all times in as sound and healthy condition as when sold to Fahl, and that he received proper care and that he was properly exercised. Such assumption must be indulged because the uncontradicted evidence was to that effect. It will be observed that the written guaranty as above set out consists of three paragraphs of three full sentences. The scope of the guaranty is primarily defined by the first sentence. The second sentence specifies a remedy for a breach. As to whether such remedy is exclusive or merely cumulative or optional in its relation to Fahl, we shall hereafter consider. The remedy is in substance that, in case

of a breach of the warranty, appellants agreed that they would receive the stallion back, and Fahl agreed that under such circumstances he would accept another in the place of the one purchased, the remedy to be available only in case Fahl returned the horse to appellants at Lafayette by April 1, 1912. The third sentence is important under the facts of this case only to the extent that it illuminates the second sentence. The third sentence consists of an agreement by Fahl relating to a possibility of the purchased horse becoming disabled before delivery. It is couched in the same language as Fahl's agreement expressed in the second sentence, and is in effect that he would accept another horse under the circumstances named in place of the one purchased. We think it apparent that had the horse become disabled as provided in the third sentence, Fahl would have been obliged to accept another horse, and that failing to do so, he would have been without remedy. Returning to a consideration of the second sentence, where a stipulation annexed to a contract of warranty by its terms confers on the purchaser of personal property the mere

2. right or privilege of returning the property in case it does not prove to be as warranted, and making settlement on specified terms, but does not require him to do so in case he desires to avail himself of the breach, it is at least the general rule that such stipulation extends to the purchaser merely an optional or cumulative remedy, and that if he elects to do so, he may retain the property and maintain an action for damages based on the breach of the warranty. But where the stipulation for the return of the property in case it does not prove to be as warranted is mandatory, the remedy afforded by the stipulation is exclusive. *J. I. Case Threshing Mach. Co.* v. *Badger* (1914), 56 Ind. App. 399, 105 N. E. 576; 35 Cyc 437; *Wasatch, etc., Co.* v. *Morgan, etc., Co.* (1907), 32 Utah 229, 89 Pac. 1009, 12 L. R. A. (N. S.) 540, and note. Contracts of warranty containing provisions for the return of the prop-

erty in case it is found to be otherwise than as war-
1.   ranted by the vendor present themselves in such vary-
ing shades of meaning and expression that courts find
it at times a difficult task to classify a particular contract
in the one group rather than the other. However, in each
of the following the contract involved was either very
similar to, or identical with, the instrument under considera-
tion, and in each case it was held that in the absence of
fraud the return of the property and a settlement as speci-
fied excluded all other remedies for a breach of the war-
ranty. *Nave* v. *Powell* (1912), 52 Ind. App. 496, 96 N. E.
395; *Hickman* v. *Richardson* (1914), 92 Kan. 716, 142 Pac.
964; *Walters* v. *Akers* (1907), (Ky.) 101 S. W. 1179;
*Oltmanns Bros.* v. *Poland* (1912), (Tex. Civ. App.) 142 S.
W. 653; *Highsmith* v. *Hammonds* (1911), 99 Ark. 400, 138
S. W. 635; *Merchants Nat. Bank* v. *Grigsby* (1915), 170
Iowa 675, 149 N. W. 626.

The question involved is fully considered in the cases
above cited, and we, therefore, omit further discussion here.
The cited decisions appeal to us as sound. We are con-
strained to follow them. We hold that the contract here
provides its own exclusive remedy for a breach of warranty
as made. The horse having proven to be otherwise than
as warranted, and assuming for the present that there was
no countervailing fact or circumstance, it became Fahl's
duty, if he desired to avail himself of the breach, to take
the initiative and return the horse to appellants at Lafayette
by April 1, 1912. Had he done so, it would then have
become appellants' duty to deliver to Fahl another imported
percheron stallion equal in value to the one sold had it
been as warranted. Had appellants failed or refused to
do so, Fahl would have had ample grounds for relief, but
failing to return the horse, he was deprived of all remedy,
in the absence of some additional controlling fact. If
there was such additional controlling fact, it consisted in
the transaction of March 25, 1912. We therefore proceed

to determine the force and effect of the arrangement made by the parties at that time, which was in substance

3. as follows: Fahl had ascertained that the horse was not a satisfactory, sure breeder, and thereupon called upon appellants at Lafayette. The horse was left at Huntington, and Fahl did not return or offer to return him to appellants. Fahl merely stated the facts and expressed his dissatisfaction. Appellants, drawing on their experience, theorized somewhat respecting the causes of the horse's failure, and suggested that Fahl try him another year. To this Fahl consented. By this new additional arrangement, it cannot be plausibly contended that Fahl continued under the obligation to return the horse by April 1, 1912, in order that he might avail himself of a breach of the warranty. Appellants by such arrangement waived the return of the horse at that time. Nor can it be successfully contended that after April 1, 1912, appellants were relieved of liability under the warranty. The only reasonable holding is that by such arrangement the parties contemplated an extension of the warranty for another year or until April 1, 1913. The warranty being so extended, the remedial portion thereof was extended with it. *Merchants Nat. Bank* v. *Grigsby, supra.* It follows that if Fahl desired to avail himself of the breach of warranty, he was under the same obligation to return the horse by April 1, 1913, as indicated respecting the return by April 1, 1912, in the absence of such arrangement. Some averments of the counterclaim disclose that such was his view of the situation. From March 25, 1912, to April 1, 1913, Fahl was silent. Although he made payments on the notes as we have indicated, he took no action. In fact he at no time returned or offered to return the horse to appellants at Lafayette. He did make some complaint to appellants in August or September of 1913, but even at that late day did not tender or offer to return the horse. In view of the foregoing, it is apparent that the evidence was insufficient

to sustain the verdict as returned on the counterclaim. We proceed to consider the sufficiency of the evidence in its relation to the issues formed by the complaint and answer.

4. It is conceded that Fahl failed to pay the interest on the notes representing the purchase price of the stallion and also $800 of the principal. The notes were long past maturity. Under such circumstances, the chattel mortgage given to secure payment of the notes, expressly authorized appellants to take possession of the stallion and to sell him on notice at either public or private sale. There having been default, and demand for possession having been made, appellants *prima facie* were authorized to maintain replevin to regain possession of the horse. Possession having been thus acquired, proceeding as specified by the mortgage, the regularity of which is not challenged, appellants were within their rights in causing the stallion to be sold and in becoming the purchasers at the sale, and in applying the proceeds to the discharge of the notes. *Whitehead* v. *Coyle* (1890), 1 Ind. App. 450, 27 N. E. 716; *Lee* v. *Fox* (1888), 113 Ind. 98, 14 N. E. 889; *Broadhead* v. *McKay* (1874), 46 Ind. 595; *Nichols, etc., Co.* v. *Burch* (1891), 128 Ind. 324, 27 N. E. 737; *Syfers* v. *Bradley* (1888), 115 Ind. 345, 16 N. E. 805, 17 N. E. 619.

As against such *prima facie* rights of appellants, appellee Fahl interposes three special defenses. The first presented by the second paragraph of answer is unproven and disproven. Our discussion discloses that the second, presented by the third paragraph of answer, is in part unproven, and also that considered as a whole and measured by all the facts, it is not a defense. Assuming for purposes of discussion the sufficiency of the fourth paragraph of answer, presenting the third special defense, its theory as we interpret it, is new title in Fahl, based on the purchase at the bankruptcy sale, an estoppel as against appellants, and a waiver of their rights under the mortgage. There was no evidence to support the

estoppel or waiver features of the answer. As to the other elements of the new title pleaded, it may be said that the mere fact that the horse was scheduled in the bankruptcy proceeding as a part of Fahl's property did not affect appellants' lien. The trustee took the property subject to the lien, and Fahl, as a purchaser at the bankruptcy sale, acquired title of no higher degree than the trustee acquired from him. 7 C. J. 185 and cases cited. The evidence is not sufficient to sustain the verdict as returned on the issues joined on the complaint.

The court's action in substituting the trustee in bankruptcy to prosecute the cause of action presented by the counterclaim is challenged. It is not controverted

6. that the claim declared on by the counterclaim, if it existed, passed to the trustee by virtue of the bankruptcy proceeding. Such being the case, the trustee is the real party in interest as to such claim. The substitution, therefore, appears to have been proper. Appellants' briefs are criticized, but they are sufficient to present the questions decided. Other questions are not considered or decided.

The judgment is reversed, with instructions to sustain the motion for a new trial.

NOTE.—Reported in 113 N. E. 1009. Sale of animals for breeding purposes, warranty, effect, Ann. Cas. 1916A 573. See under (1-3) 35 Cyc 437-439; (4) 7 Cyc 20; (6) 5 Cyc 378. Sales, privilege of returning goods as to claim for breach of warranty, Ann. Cas. 1915D 1159. Replevin, action of, rules as to title and parties, 1 Ann. Cas. 984.