## MAPLE ET AL. *v.* SEABOARD SURETY COMPANY

[No. 17,584. Filed May 23, 1947. Rehearing denied September 30, 1947. Transfer denied November 13, 1947.]

*Michael L. Fansler,* of Indianapolis, and *Louis A. Reidelback,* of Winamac, for appellants.

*James A. Dilts,* of Winamac, *Frank H. Masters,* Jr., of Joliet, Illinois, *Vogel & Bunge,* of Chicago, Illinois, and *White, Wright & Boleman, George C. Forrey III,*

and *Edward B. Raub, Jr.*, all of Indianapolis, for appellees.

CRUMPACKER, C. J.—During the time involved in this controversy the appellant Kenneth C. Daniels and the appellee Raymond A. Craig were co-partners doing business as the Craig Construction Company, and from the last week in August, 1945, until the early part of the following December the appellant George W. Maple was employed by said partnership as a machine operator.

In the spring and summer of 1945 the Craig Construction Company was awarded contracts for the construction of two drainage ditches in Pulaski County, Indiana, and the faithful performance of each of these contracts was secured by a separate bond executed by the appellee Seaboard Surety Company. Before either of said bonds was executed by Seaboard the Craig Construction Company made a written application therefor upon a printed form furnished by said appellee. Said applications, except for identification of the contract to be guaranteed, are identical and the part thereof pertinent to this appeal is as follows:

"6th. For the better protection and security of the Surety, the undersigned, as of the date hereof, hereby assigns, transfers, and conveys to the Surety, the SEABOARD SURETY COMPANY, all right, title and interest of the undersigned in and to all supplies, tools, plant, *equipment*, and materials (whether completely manufactured or not) wherever located which are now or may hereafter be purchased, *used* or acquired for use, entirely or partly, *in the performance of said contract*, and also all rights in and to all subcontracts relating to said work which have been or may hereafter be made, together with the materials embraced therein, and as well all the rights, title and interest of the undersigned in and to all bonds exe-

cuted to the undersigned securing the performance by said subcontractors of such subcontracts; and the undersigned does hereby authorize and empower the Surety, its authorized agents or attorneys, to enter upon and take possession of said supplies, tools, plant, equipment, materials and subcontracts, and enforce, use and enjoy the title thereto and the possession thereof in the event of any default on the part of the undersigned in the performance of the contract hereinabove referred to or in the event of any breach of the terms of this agreement." (Emphasis supplied.)

The Craig Construction Company defaulted in the performance of both contracts and Seaboard was required to complete them. Relying upon paragraph 6 of each of said bond applications, as above set forth, Seaboard brought this suit against Craig, Daniels and Maple to replevy two specifically described tractor-bulldozers, each of which it claims is "equipment" used "in the performance of said contracts" by the Craig Construction Company. Daniels answered to the effect that the equipment sought to be replevied was his property; that it had never belonged to the Craig Construction Company and that he had sold it to Maple, for value received, before this action was commenced, and that it had not been used on any work guaranteed by the Seaboard surety bonds. Maple filed an affirmative answer in which he alleges that he is the sole owner of the property described in Seaboard's complaint; that neither Craig nor Daniels have any interest in it whatever and that Seaboard, by filing a replevin bond as provided by statute, has deprived him of its possession and use, and he asks for its return with damages. He also filed a cross-complaint alleging ownership, wrongful dispossession and damages. Upon Seaboard's motion this cross-complaint was stricken from the files. Briefs of the parties indicate that Craig

made no defense. Judgment went for Seaboard to the effect that "it is hereby awarded possession" of the disputed property. Maple and Daniels appeal and charge the trial court with error (1) in overruling their joint and several motion for a new trial, and (2) in striking out the cross-complaint of the appellant Maple. So far as it affects the questions presented in appellants' brief, their motion for a new trial asserts that the decision of the court is not sustained by sufficient evidence and is contrary to law.

Neither the pleadings nor the evidence in this case give Seaboard any right to the possession of the property in controversy except as such right may arise out of the provisions of Clause 6 of the bond applications which we have heretofore set out in full. The appellants contend that these instruments constitute nothing more than equitable liens on the property included in their terms. That "an equitable lien is not an estate or property in the thing itself, nor a right to recover the thing, —that is, a right that may be a basis of a possessory action," such as replevin. Pomeroy Equity Jurisprudence (5th Ed.) §§ 165, 1233. They reach this conclusion through the following process or reasoning: Said instruments are not chattel mortgages because (1) they are not acknowledged nor recorded as required by § 51-501 et seq., Burns' 1933 (Supp.); Acts 1935, ch. 147, p. 498 et seq., and (2) they do not contain a defeasance clause. Fletcher Amer. Nat. Bank v. McDermid, Rec. (1921), 76 Ind. App. 150, 156, 128 N. E. 685. They are not consummated pledges because a pledge is a bailment of personal property as security for some engagement and delivery of possession is necessary to complete it. Therefore, they constitute nothing more than incompleted pledge contracts which the law characterizes as equitable liens, carrying with them neither title to, nor

the right to possession of, the property involved until such liens are foreclosed.

We would find ourselves in full accord with this contention if we were persuaded that the instruments under scrutiny are not chattel mortgages. We have been unable to so conclude. We recognize that as to third parties without notice these instruments have no validity as chattel mortgages because they are neither acknowledged nor filed as required by the Chattel Mortgage Act of 1935. § 51-501 *et seq.*, Burns' 1933 (Supp.). *Universal Discount Corp.* v. *Brooks* (1945), 115 Ind. App. 591, 58 N. E. (2d) 369. It is the general rule, however, that between the parties and their privies an unacknowledged and unrecorded contract may be a valid and binding chattel mortgage. 14 C. J. S. Chattel Mortgages, § 82, p. 694. We have been referred to no decision of this or the Supreme Court, nor do we know of any, construing the Chattel Mortgage Act of 1935 as abrogating the general rule. The appellants urge that *Universal Discount Corp.* v. *Brooks, supra,* so holds because of the statement therein that "Nowhere does the Act give or suggest the giving of any virtue as a chattel mortgage to any instrument not so executed," i. e., duly acknowledged and filed. This statement, isolated and standing alone, would seem to support the appellants' contention but when we consider it in its context, as we must, it is clear that its application is limited to those persons who are not parties or privies to the instrument involved.

It is next contended that the instruments in question are not chattel mortgages because they contain no defeasance clauses. While it is true that the presence of a defeasance clause is of material assistance in determining the character of an instrument, we do not believe that its absence precludes the possi-

bility of such instrument being a chattel mortgage. We quote from the text of 14 C. J. S. Chattel Mortgages, § 53, p. 656 as follows: "A characteristic of a mortgage is that there should be a defeasance, and the absence of such a clause is a significant circumstance in determining whether or not an informal instrument or a bill of sale was intended as a mortgage; but a defeasance clause is not essential to the validity of a mortgage. If, from the nature of the instrument, standing alone, or read in the light of the surrounding circumstances, it appears to have been given as a security, it must be considered as a mortgage, or if an expressed defeasance is lacking one may be implied from the terms of the instrument." This appeals to us as sound law and we adopt it as a guide in the determination of the present question. Clearly the instruments before us are surety contracts. They were intended to secure Seaboard against liability on its bonds in the event the Craig Construction Company failed to perform its contracts. They conveyed title to equipment used in the performance of such contracts to Seaboard with possession contingent upon the Craig Construction Company's default in such performance. In the event of faithful performance possession remains in the Craig Construction Company and all consideration for the retention of title by Seaboard thereupon fails. Under such circumstances we think a defeasance will be implied.

Again the appellants isolate a statement contained in the opinion of this court in *Fletcher Amer. Nat. Bank* v. *McDermid, Rec., supra,* and urge it as placing Indiana squarely behind the proposition that an express defeasance is essential to a chattel mortgage. In that case the court said: "It is obvious that the instrument, which is the basis of the appellants' alleged lien, is not a chattel mortgage, as it does not contain a defeasance

clause." That fact was significant and was rightfully considered by the court but an examination of the decision will disclose that no contention was made by anyone that the instrument involved was a chattel mortgage. It was intended to be a pledge and the parties sought to avoid the necessity of delivery of the security through a device the court held to be a mere subterfuge. In view of the questions the court had before it and the decision in its entirety we cannot accept the quoted statement as authority for the contention that without a defeasance no instrument can be a chattel mortgage. The Supreme Court of Illinois in *Southern Surety Co.* v. *Peoples State Bank* (1928), 332 Ill. 362, 163 N. E. 659, had an instrument under consideration identical in all particulars with those at bar and found it necessary to fix its character in order that the applicability of the Illinois bulk sales law might be determined. In a well reasoned opinion the court held the instrument to be a chattel mortgage. Although this decision is not binding on us, we recognize the court of its origin as one of eminent authority and, in the absence of precedent in our own state, we consider such decision persuasive. It is our opinion that the instruments involved in the case at bar are chattel mortgages. By their terms they give the mortgagee the right to possession of the security upon default of the obligation secured and therefore they will support a possessory action. *Crouch* v. *Fahl* (1916), 63 Ind. App. 257, 267, 113 N. E. 1009.

The trial court found that Seaboard was entitled to possession of two machines specifically described therein as "Tractor No. 9G-3251 with Bulldozer attachment No. B7-59" and "Tractor No. 9G-4531 with Bulldozer attachment No. B7-93" and in its judgment awarded such possession to Seaboard. It is conceded that Seaboard has no interest in or claim to

either of such machines unless it was used by the Craig Construction Company in the performance of its ditch contracts. The appellants contend that there is no evidence whatever that machine No. 9G-4531 was used on any project covered by said contracts. Under such circumstances, they say, this case is controlled by *Thomas v. Patton* (1880), 71 Ind. 241, which holds that where an action in replevin is brought for several articles, and they are taken on the writ, and the proof fails as to one of such articles, and there is judgment for all of them, the judgment is erroneous and must be reversed. We agree with the appellants' statement of the law but we find substantial evidence in the record tending to prove that both of the machines involved in the judgment herein were used by the Craig Construction Company in the performance of one of the contracts, commonly called the Hill ditch project, which Seaboard was subsequently called upon to complete. A. M. Van Meter, County Surveyor of Pulaski County, under whose supervision all work on these contracts was done, testified as follows: Q. "Did you have the opportunity to observe—were you in a place where you could see as a surveyor, and being such surveyor in the project heretofore mentioned, and particularly the Hill ditch, and from that knowledge do you know whether those two machines were used on that ditch?" A. "Yes sir." Q. "They were?" A. "Yes sir."

It is next contended that the undisputed evidence discloses that the two machines replevied were not the property of the Craig Construction Company and never had been, and even though they were used in the construction of the Hill ditch, the Craig Construction Company was powerless to encumber the title of the owner. It appears without dispute that in the summer of 1945 the Craig Construction Company,

a partnership composed of the appellant Daniels and the appellee Craig, was awarded a contract to build the Hill ditch. On August 1, 1945, the Craig Construction Company and the appellant Daniels borrowed $6,929.75 from one H. A. Camlin of Rockford, Illinois, and, to secure the payment thereof, mortgaged the two machines in question and one other. On August 7, 1945, six days later, the two machines in controversy were purchased from S. J. Groves & Sons Company of Charleston, Indiana, for $9,037.50 and shipped to Winamac, county seat of Pulaski County, in which county the Hill ditch was to be built. Daniels negotiated the purchase, and a bill of sale to him individually for each machine was executed by the S. J. Groves & Sons Company. At that time the Craig Construction Company had two drainage contracts under way in Illinois, two in Starke County, Indiana, and one other in Pulaski County. From this evidence we think the trial court could reasonably have inferred that the Craig Construction Company was in need of additional equipment for work on the Hill ditch. They borrowed the money from Camlin to buy it and although the bills of sale ran to Daniels the equipment was in truth the property of the partnership. There are other circumstances disclosed by the evidence indicating that such was the situation but to detail them here would unduly extend this opinion. In view of the entire record we cannot say that the court's finding that the Craig Construction Company is the owner of the property replevied is wholly unsupported by substantial evidence.

This brings us to a consideration of the rights of the appellant Maple. He claims to be an innocent purchaser for value and, as Seaboard's mortgages are unrecorded and he had no notice thereof, they are of no validity as to him. It is conceded that the

Seaboard mortgages are unrecorded. Maple is not a party to them and there is no direct evidence that he ever knew anything about them. The trial court, however, concluded that he did. He worked for the Craig Construction Company from August to early December, 1945, and during all of that time he operated one of the bulldozers here involved. The Craig Construction Company defaulted in the performance of the Hill ditch contract late in December, 1945, and on January 5, 1946, Daniels ostensibly sold both bulldozers to Maple. Bills of sale were executed but the evidence is conflicting as to whether either the bills of sale or the machines themselves were ever actually delivered. There is testimony to the effect that as late as May 13, 1946, Maple was holding the machines as Daniels' agent and that on May 21, 1946, Daniels still had possession of the bills of sale. It also appears that when demand was made upon Maple, preliminary to the institution of this suit, he said he was buying one of the machines on contract but the other belonged to Daniels. There is further evidence that Daniels used these machines in his own business on several occasions after he claims to have sold them. The Craig Construction Company was in default in both its contracts in Pulaski County and also in Starke County and owed many thousands of dollars in material and labor connected therewith. The appellants deny or explain all of these things but the trial court, which had the atmosphere and feel of the case, concluded that there had been no actual sale to Maple. We cannot say that reasonable minds must necessarily reach an adverse conclusion.

We see no reversible error in the action of the court in striking out the cross-complaint of the appellant Maple. He answered specially and pleaded ownership and the good faith purchase of the property in suit.

Had he prevailed he would have had his remedy for damages on Seaboard's replevin bond.

Judgment affirmed.

NOTE.—Reported in 73 N. E. (2d) 80.